1  JENNIFER A. BECKER  State Bar # 121319
   JOHN B. SULLIVAN  State Bar # 238306
2  LONG & LEVIT LLP
   465 California Street, Suite 500
3  San Francisco, CA  94104
   TEL: (415) 397-2222  FAX: (415) 397-6392
4
   jabecker@longlevit.com / jsullivan@longlevit.com
5
   Attorneys for Defendant
6  MBH ARCHITECTS, INC. aka McNULTY
   BRISKMAN HEATH
7

*ORIGINAL FILED*

*OCT 1 6 2007*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

**JSW**

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  BOVIS LEND LEASE, INC. as assignee of LNR-LENNAR BRANNAN STREET, LLC, | CASE No. *C 07 5262* |
| 13 | **NOTICE OF REMOVAL OF ACTION** |
| 14                    Plaintiff, | **UNDER 28 U.S.C. SEC. 1441(b) (DIVERSITY)** |
| 15        vs. | Action Filed:      June 12, 2007 |
| 16  MBH ARCHITECTS, INC. aka McNULTY BRISKMAN HEATH and | |
| 17  DOES 1 through 150, inclusive, | |
| 18                    Defendant. | |

19

20  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21          PLEASE TAKE NOTICE THAT defendant MBH Architects, Inc. ("MBH"),

22  hereby removes to this Court the state court action described below.

23          1.      On June 12, 2007, an action was commenced in the Superior Court of the

24  State of California in and for the County of San Francisco, entitled Bovis Lend Lease, Inc.,

25  Plaintiff vs. MBH Architects, Inc., as Case Number CGC07-464235.  A true and correct copy of

26  the complaint is attached hereto as Exhibit A.

27          2.      The first date upon which defendant MBH received a copy of the said

28  complaint was June 14, 2007 when MBH's counsel was served with a copy of said complaint and

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

                                    1

1    a summons from the state court, requesting that it accept service on behalf of MBH.  Service was

2    effected on July 5, 2007.  A copy of the Notice and Acknowledgement of Receipt is attached

3    hereto as Exhibit B.

4            3.      This action is a civil action over which this Court has original jurisdiction

5    pursuant to 28 U.S.C. §1332, and is one which may be removed to this Court by MBH pursuant

6    to the provisions of 28 U.S.C. §1441(b) in that it is a civil action between citizens of different

7    states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8    As set forth in ¶ 13 of the Complaint, Plaintiff, Bovis Lend Lease, Inc. ("Bovis") alleges it has

9    sustained actual injury in excess of $5,000,000.

10            4.      When the complaint was originally filed, it was not clear that complete

11    diversity existed.  Bovis claimed only to be a "corporation duly organized and existing by virtue

12    of the laws of the State of Florida."  However, it did not state where it had its principal place of

13    business.  28 U.S.C. §1332(c)(1).

14            5.      MBH subsequently served a single interrogatory stating "For purposes of

15    diversity jurisdiction under 28 U.S.C. §1332, please identify the state in which Bovis Lend Lease,

16    Inc. had "its principal place of business" at the time the **LAWSUIT** was filed.  (For purposes of

17    this special interrogatory, the term "LAWSUIT" refers to *Bovis Len Lease, Inc. v. MBH*

18    *Architects, Inc.* filed in San Francisco County, Case No. CGC07-464235)."  A true and correct

19    copy of this special interrogatory is attached as Exhibit C.

20            6.      Bovis responded on September 20, 2007, "Bovis Lend Lease, Inc. is

21    incorporated in Florida and its primary U.S. corporate headquarters are located in New York.

22    Bovis Lend Lease, Inc. also has offices in 16 other U.S. cities, including San Francisco.  Bovis

23    Lend Lease, Inc. objects to this interrogatory to the extent that identification of its "principal

24    place of business calls for a legal conclusion."  A true and correct copy of Bovis' response to this

25    special interrogatory is attached as Exhibit D.

26            7.      MBH is informed and believes, based upon Bovis' response to its special

27    interrogatory, that plaintiff Bovis was, and still is, a citizen of the State of Florida and the State of

28    New York.  MBH was, at the time of filing this action, and still is, incorporated under the laws of

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SEC. 1441(b) (DIVERSITY)

1    the State of California, having its principal place of business in the state of California.

2        8.    The original complaint purports to state claims against unnamed, fictitious

3    defendants identified as "DOES 1-50." For purposes of this removal, "the citizenship of

4    defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441(a).

5        9.    Jurisdiction - The parties have complete diversity and may be removed

6    pursuant to 28 U.S.C. §1441(b). Defendant, MBH, is a citizen of the State of California.

7    Plaintiff, Bovis, is a citizen of Florida or New York. Bovis seeks damages in excess of

8    $5,000,000. (Exhibit A, ¶13).

9        11.    Pursuant to 28 U.S.C. §84(a), the United States District Court for the

10    Northern District of California embraces the Superior Court of the State of California, County of

11    San Francisco, where the action is currently pending, and thus the court is a proper venue for the

12    action.

13        12.    Intradistrict Assignment – MBH is informed and believes that this action

14    "arose" within the meaning of Local Rule 3-2(c) in the County of San Francisco, making the San

15    Francisco Division a proper division for assignment of this case.

16        12.    MBH is filing written notice of this removal with the Clerk of the state

17    court in which the action is currently pending pursuant to 28 U.S.C. §1446(d). Copies of the

18    Notice to Adverse Party of Removal to the Federal Court, together with this Notice of Removal,

19    are being served upon plaintiff's counsel pursuant to 28 U.S.C. §1446(d).

20        13.    A true and correct copy the Certificate of Merit filed by Bovis in the state

21    court proceedings is attached as Exhibit E.

22        14.    A true and correct copy the Notice of Hearing on Application of Steven E.

23    Ray and Lizabeth A. Muniz to Appear as Counsel Pro Hac Vice filed by Bovis in the state court

24    proceedings is attached as Exhibit F.

25        15.    A true and correct copy the Verified Application of Steven E. Ray to

26    Appear as Counsel Pro Hac Vice filed by Bovis in the state court proceedings is attached as

27    Exhibit G.

28        16.    A true and correct copy the Verified Application of Lizabeth A. Muniz to

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

3

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SEC. 1441(b) (DIVERSITY)

1    Exhibit H.

2           17.    A true and correct copy the Answer filed by MBH in the state court

3    proceedings is attached as Exhibit I.

4           18.    A true and correct copy the Supplemental Declaration of Bryce Carroll in

5    Support of Application of Steven J. Ray and Lizabeth Muniz to as Appear as Counsel Pro Hac

6    Vice filed by Bovis in the state court proceedings is attached as Exhibit J.

7

8    Dated: October 13, 2007                    LONG & LEVIT LLP

9

10                   By    _____

11                          JENNIFER A. BECKER
                      JOHN B. SULLIVAN

12                          Attorneys for Defendant
                      MBH ARCHITECTS, INC. aka

13                          McNULTY BRISKMAN HEATH

14    DOCS\S7630-028\539742.V1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SEC. 1441(b) (DIVERSITY)

# EXHIBIT A

1  S. MITCHELL KAPLAN (SBN 095065)
   BRYCE CARROLL (SBN 208593)
2  MOLLY C. MACHOLD (SBN 221005)
   GORDON & REES LLP
3  275 Battery Street, Suite 2000
   San Francisco, CA 94111
4  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
5
6  Attorneys for Plaintiff
   BOVIS LEND LEASE, INC. as assignee of
7  LNR-LENNAR BRANNAN STREET, LLC
8
9          SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

ENDORSED
FILED
San Francisco County Superior Court

JUN 1 2 2007

GORDON PARK-LI, Clerk
BY: CRISTINA E BAUTISTA
                Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

NOV 9   2007 -9:00 AM

DEPARTMENT 212

10
11  BOVIS LEND LEASE, INC. as assignee of       )   CASE NO. 07 - 464235
    LNR-LENNAR BRANNAN STREET, LLC,            )
12                                             )   COMPLAINT FOR DAMAGES
                    Plaintiffs,                )
13                                             )   1.  BREACH OF CONTRACT;
        vs.                                    )   2.  PROFESSIONAL
14                                             )       NEGLIGENCE;
    MBH ARCHITECTS, INC. aka MCNULTY           )   3.  CONTRACTURAL
15  BRISKMAN HEATH and DOES 1 through 150,     )       INDEMNITY
                                               )   4.  EQUITABLE INDEMNITY &
16                  Defendants.                )       CONTRIBUTION
                                               )   5.  NEGLIGENCE
17  _____)

18      BOVIS LEND LEASE, INC. as assignee of LNR-LENNAR BRANNAN STREET, LLC

19  ("BOVIS" or "Plaintiff") alleges causes of action against Defendants, and each of them as

20  follows:

21                          GENERAL ALLEGATIONS

22      1.      BOVIS was and is a corporation duly organized and existing by virtue of the laws

23  of the State of Florida at all times herein mentioned. BOVIS is authorized to do business in

24  California, and conducts business out of offices it maintains in San Francisco, California.

25      2. LNR-LENNAR BRANNAN STREET, LLC (LENNAR) is a California Limited

26  Liability Corporation licensed to do business in the State of California. LENNAR.

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

3.      LENNAR was the developer the condominium complex located at 200 Brannan Street and One Federal Street in San Francisco, CA. (The Project).  The Project was initially known as Brannan Square and was substantially completed in 2005.

4.      BOVIS was the general contractor for the Project.

5.      Plaintiff is informed and believed and thereon alleges that Defendant MBH ARCHITECTS, INC. aka MCNULTY BRISKMAN HEATH ("MBH"), and  is a corporation doing business in the State of California and conducts business out of the offices it maintains in Alameda, California.

6.      The true names and capacities, whether individual, corporate, associate or otherwise, of defendants, Does 1 through 150, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sue said defendants under Section 474 of the Code of Civil Procedure by such fictitious names, and when the true names and capacities of said defendants are ascertained, Plaintiff will move this Court for leave to amend this Complaint accordingly.  Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as Doe are each business entities licensed to do business in the State of California and each is in some manner  responsible for the events and happenings referred to herein, and proximately caused injuries and damage to the Plaintiff as alleged hereinafter.

7.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned Defendants, and each of them, were the agents, servants, partners and employees of other Co-Defendants, and each was acting within the scope of its authority as agent, servant, partner and employee and with the permission and consent of each of the other Defendants.

8. In May, 2006, as part of a settlement of disputes between LENNAR and BOVIS, LENNAR assigned to BOVIS all of LENNAR's rights and remedies against MBH and each of MBH's subconsultants up through the end of this litigation.  BOVIS brings this complaint as the Assignee of Lennar and stands in Lennar's shoes in pursuing these claims against Bovis and Does 1-150.

COMPLAINT FOR DAMAGES

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

## FIRST CAUSE OF ACTION

### (Breach of Contract against defendant MBH)

9.    Plaintiff realleges and incorporate herein by reference paragraphs 1 through 8, inclusive, of the general allegations as though set forth in full in this first cause of action.

10.  On or about January 24, 2000, LENNAR entered into an agreement with MBH to provide architectural design services and construction administration services for the Project. As part of this agreement MBH agreed to act as the architect of record for the Project. A true and correct copy of this contract is attached hereto as Exhibit "A."

11.    LENNAR has completed all of its obligations under the terms and conditions of its contract with MBH, and has paid to MBH over $2,511,000 in fees for the architectural service provided by MBH and its design consultants.

12.    Plaintiff now contends that MBH has repeatedly breached the terms and conditions of its contract with LENNAR thereby causing LENNAR to sustain damages in excess of $5 million. These breaches of contract include, but are not limited to: (1) the issuance of incomplete, inaccurate, and defective plans and specifications which resulted in significantly increased construction costs, project delay costs and remedial repair costs all paid by LENNAR, (2) failure to timely respond to Requests for Information and other inquires from LENNAR and/or BOVIS during construction, (3) improper and inaccurate responses to RFI's and other design requests to LENNAR and BOVIS, (4) the designation of improper building materials such as counter tops, gates, windows, doors, appliances, fireplaces and other building materials used at the Project, (5) issuance of defective plans and specifications resulting in warranty claims and construction defect claims by individual unit owners and the HOA, (6) failure to designate and design proper and adequate building design to meet the project guidelines established by LENNAR, (7) failure to adequately integrate shop drawings into its plans and specifications, (8) failure to properly provide construction administration services, (9) failure to design the building to meet applicable building codes, and (10) improper supervision of its own sub-consultants.

1    Each of these are examples of the multiple and repeated breaches of contract by MBH.

2          13.    As a direct and proximate result of the MBH's breach of contract, Plaintiff has

3    sustained actual injury in excess of $5 million in an exact amount to be determined at trial. As a

4    further result of MBH's breach of contract, Plaintiff has been required to and will be required in

5    the future to expend monies, including litigation costs, experts' fees, and investigation costs.

6    Plaintiff will seek leave of the Court to allege the precise amount of said damages when the same

7    has been ascertained.

8          14.    Plaintiff is informed and believes, and thereon alleges, that other material

9    breaches to the contract exist and that Plaintiff will amend its Complaint as to those breaches

10    when they become known.

11          WHEREFORE, Plaintiff prays for judgment as set forth below.

12                            SECOND CAUSE OF ACTION

13          (Professional Negligence Against MBH; and Does 100 through 150)

14          15.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 14,

15    inclusive, of the general allegations as though set forth in full in this second cause of action.

16          16.    Defendants MBH and Does 100 through 150, and each of them, breached the

17    standard of care of architects and or other design engineers performing contractual design and

18    construction administration services in the San Francisco Bay Area who contracted to provide

19    the design and construction services of the type supplied by MBH.

20          17.    Defendants MBH, and Does 100 through 150, and each of their designs were

21    negligent, defective and below the standard of care in that the plans, specifications, and design

22    and construction administration services were defective. Such negligent services include, but are

23    not limited to: (1) the issuance of incomplete, inaccurate, and defective plans and specifications

24    which resulted in significantly increased construction costs, project delay costs and remedial

25    repair costs all paid by LENNAR, (2) failure to timely respond to Requests for Information and

26    other inquires from LENNAR and/or BOVIS during construction, (3) improper and inaccurate

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1  responses to RFI's and other design requests of LENNAR and BOVIS, (4) the designation of

2  improper building materials such as counter tops, gates, windows, doors, appliances, fireplaces

3  and other building materials used at the Project, (5) issuance of defective plans and specifications

4  resulting in warranty claims and design and construction defect claims by individual unit owners

5  and the HOA, (6) failure to designate and design proper and adequate building design to meet the

6  project guidelines established by LENNAR, (7) failure to adequately integrate shop drawings

7  into its plans and specifications, (8) failure to properly provide construction administration

8  services, (9) failure to design the building to meet applicable building codes, and (10) improper

9  supervision of its own sub-consultants. Each of these negligent acts caused either delay in

10  completion of the Project or damage to the Project.

11      18.    Said Defendants, and each of them, owed a duty to Plaintiff to perform, with

12  reasonable care, the design services, consultative services, and other related services required of

13  them in performing such work.

14      19.    Defendants MBH, and Does 100 through 150, and each of them, breached their

15  duty of care to Plaintiff and failed to exercise reasonable care in that they performed substandard

16  design, inspection, supervision and planning for the Project.

17      20.    As a direct and proximate result of the acts and/or omissions of Defendants MBH,

18  and Does 100 through 150, and each of them, Plaintiff suffered and will continue to suffer

19  damages in an amount to be shown according to proof at trial, including but not limited to,

20  monetary damage; legal and professional costs including, attorneys' fees, experts' costs and

21  litigation expenses; costs of repairs and replacement of defective materials; testing and

22  investigation of defective materials; loss of business opportunity; and other incidental and

23  consequential damages.

24      21.    As a proximate and legal result of the negligence Defendants MBH, and Does 100

25  through 150, and each of them, Plaintiff has incurred and will continue to incur repair costs,

26  costs to investigate and make repairs to the resulting and consequential damages, and Plaintiff

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1  has incurred reasonable expert costs and expenses and attorneys' fees in the defense of this

2  matter in an amount according to proof at trial.

3       WHEREFORE, Plaintiff prays for judgment as set forth below.

4                   THIRD CAUSE OF ACTION

5              (For Contractual Indemnity against MBH)

6       22.    Plaintiff incorporates by reference Paragraphs 1 through 21, of this complaint as

7  though fully set forth herein.

8       23.    Pursuant to Section 6.07 of the written agreement between MBH and LENNAR,

9  MBH agreed to defend, indemnify and hold harmless LENNAR from claims and liability arising

10  out of the design and construction of the Project.  A true and correct copy of said written

11  agreement is attached hereto as Exhibit A and incorporated herein by reference.

12      24.    LENNAR and/or BOVIS has been forced to defend claims and/or allegations

13  arising out of MBH's work at the Project, and has and continues to incur costs and fees in

14  defense of those actions.  MBH is liable for such costs pursuant to the written agreement referred

15  to herein.

16      25.    LENNAR and/or BOVIS has performed all obligations on its part to be performed

17   and seeks enforcement of the express indemnity obligations of MBH.

18      WHEREFORE, Plaintiff prays for judgment as set forth below.

19                  FOURTH CAUSE OF ACTION

20     (For Equitable Indemnity and Contribution Against Does 1 through 150)

21      26.    Plaintiff incorporates by reference Paragraphs 1 through 25, of this complaint as

22  though fully set forth herein.

23      27.    Defendants Does 1 through 150, and each of them, had a duty of care to properly

24  and adequately design, inspect, supervise and plan the Project according to design specifications,

25  applicable building codes and industry standards.

26      28.    Plaintiff alleges that worked carried out by Defendants at the Project was

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1  negligently and carelessly designed, inspected, supervised and planned.

2     29.    Plaintiff hereby alleges that the proximate cause of the negligent and careless

3  design, supervision, inspection and planning of the Project was due to the negligence of said

4  Defendants, and that the alleged damages are such that Plaintiff has and will have, made

5  expenditures.

6     30.    Plaintiff is without active fault, culpability or negligence in the above-referenced

7  claim for damages, but is being required to defend itself as to the claims as a result of

8  Defendants' tortious conduct. Defendants Does 1 through 150, and each of them, therefore have

9  an equitable obligation to indemnify and hold Plaintiff harmless from and against any and all

10  claims, losses, damages, attorneys' fees, costs, judgments and settlement expenses incurred in

11  mitigation and defense against any claim asserted against Plaintiff.

12     31.    Plaintiff contends that pursuant to the California Supreme Court's decision in

13  *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, Plaintiff is entitled to

14  proceed against Defendants Does 1 through 150, and each of them, for a determination of the

15  extent to which Defendants should indemnify Plaintiff for any judgment made or settlement

16  entered into by Plaintiff arising from any claims of design-defects and/or damages arising out of

17  Defendants' work.

18     32.    Even if it be found that the Plaintiff was negligent under the claims, then this

19  Plaintiff is informed and believes and based thereon alleges that the negligent conduct of the

20  Defendants Does 1 through 150, and each of them, was active, primary, and affirmative, and the

21  negligence of the Plaintiff, if any, was passive, derivative, and secondary only. Plaintiff is

22  informed and believes and based thereon alleges that it is in no way legally responsible for the

23  injuries and damages arising out of Defendants' work. Plaintiff further alleges that Plaintiff is

24  entitled to partial and/or total equitable indemnity so that Plaintiff can recoup from Defendants

25  Does 1 through 150, and each of them, any and all sums Plaintiff has or must pay in the future to

26  remedy the defective conditions arising out of Defendants' work, which sum, when compared to

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1    a total judgment, would be far in excess of the proportionate amount of Plaintiffs' negligence

2    assessed by a trier of fact.

3         33.     By reason thereof, Plaintiff contends that if it is held liable for any claims or

4    allegations arising out of Defendants' work, Plaintiff is entitled to be indemnified by all

5    Defendants Does 1 through 150, and each of them, in whatever amounts may be adjudged, and

6    for its costs and expenses incurred in the defense of any claims or allegations, including

7    reasonable attorneys' fees. Plaintiff further contends that it is entitled to be indemnified for

8    expenditures heretofore and hereafter made in connection with the repairs of Project. The total

9    amount of Plaintiff's damages, costs and attorneys' fees is not yet known, and Plaintiff will ask

10   leave of this Court to insert such amounts at the time of trial

11        WHEREFORE, Plaintiff prays for judgment as set forth below.

12   <div align="center">

## FIFTH CAUSE OF ACTION

13   (Negligence Against Does 1 through 100)
</div>

14        34.     Plaintiff realleges and incorporate herein by reference paragraphs 1 through 33,

15   inclusive, of the general allegations as though set forth in full in this second cause of action.

16        35.     Defendants Does 1 through 100, and each of them, furnished professional services

17   and supervision in connection with the Project and held themselves out as qualified to perform

18   said work. Defendants owed a duty of care to use reasonable care in performing such work for

19   Plaintiff.

20        36.     Defendants Does 1 through 100, and each of them, breached their duty of care to

21   Plaintiff and failed to exercise reasonable care in that they performed substandard work

22   regarding the design and construction administrative services for the Project according to design

23   specifications, applicable building codes and industry standards. Plaintiff is informed and

24   believes and based thereon alleges that there are other acts of negligence by Defendants, and

25   each of them, which have yet to be discovered. Plaintiff will move this Court to amend its

26   Complaint once those additional acts of negligence are discovered.

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1    37.    As a direct and proximate result of Defendants Does 1 through 100, and each of

2    their negligence, Plaintiff has been, and continues to be damaged, in an amount according to

3    proof at trial.

4    38.    As a proximate and legal result of the negligence of Defendants Does 1 through

5    100, and each of them, Plaintiff has incurred and will continue to incur repair costs, costs to

6    investigate and make repairs to the resulting and consequential damages, and Plaintiff has

7    incurred reasonable expert costs and expenses and attorneys' fees in the defense of this matter in

8    an amount according to proof at trial.

9    WHEREFORE, Plaintiff prays for judgment as set forth below.

10    ## PRAYER

11    Plaintiff prays for a judgment against Defendants and Does and each of them, as follows:

12    For a judgment for damages otherwise in accordance with the contentions of Plaintiff as alleged

13    in this Complaint, according to proof at trial;

14    2.    Compensatory damages according to proof at the time of trial;

15    3.    For costs of suit;

16    4.    For all attorneys' fees per contract and as allowed by law;

17    5.    For interest according to proof;

18    6.    For disgorgement of profits and restitution of monies wrongfully obtained; and

19    7.    For such other and further relief as this Honorable Court may deem just and

20    proper.

21    DATED: June 17, 2007                    GORDON & REES, LLP

22

23                                                          By S. Mitchell Kaplan

24                                                          S. Mitchell Kaplan
                                                            Bryce Carroll

25                                                          Attorneys for Plaintiff
                                                            BOVIS LEND LEASE, INC. as assignee of

26                                                          LNR-LENNAR BRANNAN STREET, LLC

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

Vendor 229543
Contract# - 3356744

OBIGINAL
RECEIVED

JAN 2 4 2000

MBH ARCHITECTS

Project Name: Brannan Square

## PROFESSIONAL SERVICES AGREEMENT

THIS PROFESSIONAL SERVICES AGREEMENT ("Agreement") is made and executed as of this _____ day of_____, 2000, between LNR-Lennar Brannan Street, LLC, a California Limited Liability Company ("Owner") and MBH Architects, Inc., a California Professional Corporation ("Professional").

## RECITALS:

A.    Owner is the owner of certain real property located in San Francisco, CA consisting of approximately 2.75 acres of land which is improved with a two story over basement,130,000 sf UMB (250 Brannan St.), a 75,000 sf lot enclosed by a concrete wall containing assorted structures (200 Brannan Street), an 60,000 sf three story concrete building (1 Federal Street), and a 16,000 sf concrete building (1 Federal) (the "Property"). Owner intends to improve the Property with certain improvements consisting of those detailed in the attached Exhibit B (the "Project").



B.    Owner requires architectural design services for the Project. Professional is fully qualified and licensed to perform the professional skill required by this Agreement and is willing to provide all of the services set forth herein. Owner desires to retain Professional to perform such services.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants herein contained, Owner and Professional agree as follows:

### ARTICLE I

## PROFESSIONAL'S SERVICES AND RESPONSIBILITIES

1.01    Description of Professional Basic Services.  Owner hereby hires Professional to furnish and perform various professional services pertinent to the Project which are summarized in the Summary Sheet attached hereto as Exhibit "A", and are more particularly described in the Scope of Work Terms and Conditions set forth in Exhibit "B" (Scope of Basic Services) or reasonably inferable from or incidental to such services, including, but not limited to, space planning, preliminary budget estimating, preparation of all architectural drawings including schematic designs, design development drawings, construction drawings, hiring, coordination and payment of all mechanical and electrical engineering and other design subcontractors, administration of the construction contract(s) and such other services referenced as Basic Services in this Agreement (collectively, the "Basic Services").

1.02    Professional Representatives.  If specified below, Professional agrees that it shall assign the following individuals to perform the designated services in





this Agreement, who shall collectively be referred to as the "Professional Team": none specified. Each individual of the Professional Team shall devote such time as necessary to the performance of the Services as may be appropriate to and consistent with full and timely performance of this Agreement by Professional. Professional agrees that the individuals of the Professional Team shall not be removed from his or her responsibilities for the performance of the Services without the written consent of Owner, except in the event of his or her death, disability or departure from the employ of Professional. In the event, however, that an individual of the Professional Team should become unavailable to work on the Project, any subsequent management level employees selected by Professional for the performance of the Services must be approved by Owner.

1.03   Conferences, Presentations, and Coordination. Except as otherwise modified or limited by Exhibit "B", as part of the Basic Services set forth in Section 1.01 above, Professional shall (a) attend conferences, meetings, and hearings which are reasonably requested by Owner and advise and assist Owner in connection with all matters and questions pertaining to the Basic Services, (b) assist Owner in making all necessary applications, petitions, or requests and provide all information required in connection therewith for any approvals, permission, licenses, or permits from applicable governmental authorities having jurisdiction over the Project ("Authorities") which are necessary for the Project, (c) make all necessary presentations and appearances before the Authorities, (d) make revisions to documents prepared in accordance with the Basic Services as reasonably requested by Owner, and (e) coordinate with Owner and any consultants or representatives designated by Owner at each stage of Professional's Basic Services for presentation, review and approval of Owner and the Authorities, before proceeding to a subsequent phase of work under the Basic Services.

1.04   Additional Services. Owner may request certain additional services to be performed by Professional which are not set forth on Exhibit "B" or reasonably inferable from, or incidental to, the Basic Services (herein, "Additional Services"). All services incidental to the Basic Services shall be considered a part of the Basic Services. All services performed under this Agreement shall be referred to collectively as the "Services". Additional Services shall be provided only if authorized and confirmed in writing in advance by Owner. Whenever Additional Services are to be provided by Professional, Professional shall first notify Owner, in writing, that such services requested by Owner are Additional Services and not part of the Basic Services along with Professional's estimate of the costs and time frame to accomplish such Additional Services. If requested by Owner, Professional shall submit along with the description of Additional Services a maximum not-to-exceed price for such Additional Services. Owner shall not be responsible to pay for any Additional Services if such services were required due to the fault of Professional or Professional's failure to adhere to Owner's Schedule (as defined below) or its failure to otherwise perform its obligations in accordance with the terms of this Agreement. OWNER SHALL NOT BE REQUIRED TO PAY PROFESSIONAL FOR ADDITIONAL SERVICES UNLESS PROFESSIONAL STRICTLY COMPLIES WITH THE REQUIREMENTS CONTAINED IN THIS SECTION AND SECTION 7.06 HEREOF.





1.05 <u>Schedule of Performance</u>. The Architect's services shall be performed as expeditiously as is consistent with its standard of care and the orderly progress of the work. The Architect will submit for the Client's approval an estimated schedule for the performance of the Architect's services that may be adjusted as the Project proceeds. This schedule will include allowances for periods of time required for the Client's review and for approval by authorities having jurisdiction over the Project. Time limits established by this Schedule and approved by the Client shall not, except for reasonable cause, be exceeded by the Architect or Client. In no event shall Professional be entitled to payment for the expense of overtime work requiring higher than normal rates if such overtime is required to adhere to Owner's Schedule; provided, however, Professional shall be entitled to payment, at a mutually agreed upon rate, for the expense of overtime work in the event Owner requests an acceleration of all or any portion of the Services as set forth on Owner's Schedule.

1.06 <u>Status of Professional</u>. Professional acknowledges and agrees that it is acting under this Agreement solely as an independent contractor, and not as a partner or employee of Owner and shall have no authority to act for or bind or obligate Owner in any manner whatsoever, except to the extent specifically set forth herein or as may be hereinafter specifically authorized by Owner. Professional acknowledges and agrees that it is not an employee of Owner for federal or state tax purposes, and that it shall be solely responsible for its and its employees' workers' compensation insurance premiums.



1.07 <u>Term of this Agreement</u>. The term of this Agreement shall commence on the date this Agreement is executed by Professional and Owner and shall continue in effect until the date ("Termination Date") which is the first to occur of the following: (a) the date on which performance of the Services has been completed in accordance with this Agreement, or (b) seven (7) days after Professional receives a written notice from Owner ("Termination Notice") terminating this Agreement, which termination may be with or without cause as provided in Article III. If Owner terminates this Agreement without cause, Professional shall be paid for all Services rendered in accordance with the terms of this Agreement up to the Termination Date.

ARTICLE II

COMPENSATION OF PROFESSIONAL

2.01 <u>Payment for Basic Services</u>. As full and complete compensation for the Basic Services, Professional shall be paid the amount ("Basic Compensation"), in the manner set forth in <u>Exhibit "B"</u> attached hereto and made a part hereof.

2.02 <u>Payment for Additional Services</u>. For Additional Services, provided that such Additional Services are agreed upon and authorized by Owner in writing as provided by the terms of this Agreement, Professional shall be compensated by (a) a mutually agreed price set forth in the written authorization for such Additional Services, or (b) in the absence of such a separate agreement, an additional fee equal to



Professional's standard hourly rates for services by its employees and principals set forth in the "Schedule of Fees" included herein in <u>Exhibit "B"</u>, subject to any maximum price for such Additional Services as may be mutually agreed upon by Owner and Professional prior to Professional providing such Additional Services. PROFESSIONAL ACKNOWLEDGES THAT IT SHALL NOT BE ENTITLED TO RECEIVE COMPENSATION FOR ANY ADDITIONAL SERVICES IF SUCH SERVICES WERE NOT PREVIOUSLY APPROVED BY OWNER IN WRITING IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT.

2.03    <u>Reimbursable Expenses</u>. In addition to the Basic Compensation, Professional shall be reimbursed for the actual and reasonable costs of any reimbursable items in connection with the Basic Services which items are specifically listed in <u>Exhibit "B"</u> attached hereto (collectively, the "Reimbursable Expenses"). Professional shall make all requests for reimbursement of Reimbursable Expenses on its application for payment and include back-up and support in the manner set forth below.

2.04    <u>Manner of Payment</u>.

(a)    Except as otherwise set forth in <u>Exhibit "B"</u>, Professional shall submit monthly invoices to the Development Manager, Mariposa Management on or before the fifteenth (15th) day of the month in the form of a typed statement ("Application for Payment") showing in complete detail the (i) actual hours of work performed by Professional, its employees and consultants with respect to all Services rendered, if any, on a time and materials basis, for the immediately preceding month and, if requested by Owner, (ii) the percentage of completion of the Basic Services as of the date of the Application for Payment, and all previous payments made by Owner to Professional with respect to Basic Services. <u>Each Application for Payment shall be in a form acceptable to Owner and shall be accompanied by vouchers, invoices and other documentation satisfactory to Owner evidencing the amounts set forth in such Application for Payment.</u> Each Application for Payment shall include in detail a request for payment of Reimbursable Expenses and authorized Additional Services, if any.

(b)    Each Application for Payment shall be accompanied by such evidence of Professional's full payment of all of Professional's consultants and subconsultants, including, without limitation, all mechanical, structural and electrical engineers and other design and engineering professionals as is required by Owner. Such evidence shall, if requested by Owner, include conditional lien releases for the Services rendered during the month immediately preceding the date of the Application for Payment, and unconditional lien releases for the Services rendered during the months prior thereto. Both types of such releases shall be in a form approved by Owner.

(c)    For all Applications for Payment which are submitted on or before the fifteenth (15th) day of the month, payment shall be made to the Professional on



or about the last business day of such month after Owner's receipt and approval of the Application for Payment and all supporting back-up data. Applications for Payment submitted after the fifteenth (15th) day of the month shall not be processed by Owner until the fifteenth (15th) day of the following month. Payment, as used herein, means deposit in the U.S. Mail. Owner may refuse to approve any portion of any Application for Payment and shall have the right to withhold payment to the extent of that portion of the application which is reasonably disapproved if (i) Professional fails to submit with any application all appropriate back-up, including the lien releases and waivers required by this Section, (ii) liens have been recorded against the Project resulting from the Services directly because Professional's failure to pay consultants money received and properly due such consultants, or (iii) Professional has been adjudged to have committed any breach or default under this Agreement, (iv) Professional has committed any breach or default under this Agreement and has not cured such breach or default within the applicable cure period.

(d)     Professional and all consultants and subconsultants employed by Professional shall keep records in accordance with generally accepted accounting principles consistently applied, of all expenditures made and all costs, liabilities and obligations incurred under this Agreement. The expense of all bookkeeping and accounting services necessary to produce and maintain such records shall be at Professional's sole cost and expense and shall not be a Reimbursable Expense hereunder. In order to verify accurate billings for all time and material work and Reimbursable Expenses, Professional hereby grants to Owner, or its designated representative, the right during normal business hours to inspect Professional's books and records pertaining to the Project which relate to such items for a period of three (2) years after the date of final payment hereunder.

(e)     Professional understands and agrees that any payment by Owner hereunder shall not be deemed approval of any work or relieve Professional of its responsibility for defective or non-conforming work.

2.05    <u>Tax Reporting</u>. Professional shall be responsible for all applicable federal, state and other taxes related to Professional's Compensation and Owner shall not withhold or pay any such taxes on behalf of Professional, including, without limitation, federal, state and other local income taxes and social security. Since Professional is acting solely as an independent consultant under this Agreement, Professional shall not be entitled to insurance, incentive pay, or other benefits normally provided by Owner to its employees.

2.06.    <u>Maintenance of Records</u>. Professional shall maintain adequate accounting and other records related to the Services, and shall retain those records for a period of at least twenty-four (24) months. Owner may audit any and all such records of Professional and its sub-consultants upon reasonable request.



# ARTICLE III

## TERMINATION/SUSPENSION

3.01   <u>Owner's Right to Terminate</u>.  Owner shall have the right at any time, acting in its sole discretion, with or without cause including, without limitation, Owner's permanent abandonment of the Project, to terminate and cancel this Agreement by giving to Professional seven (7) days prior written notice.  Upon receipt by Professional of such notice, Professional shall immediately cease all Services under the Agreement except for the items required to comply with this Article III.

3.02   <u>Temporary Suspension</u>.  Owner shall have the right to temporarily suspend Professional's work on the Project upon no less than 24 hour prior notice.  If the Project is suspended by Owner for more than thirty (30) consecutive days, Professional shall be compensated for all Services performed prior to notice of such suspension.  When the Project is resumed, Professional's compensation shall be equitably adjusted to provide for expenses reasonably incurred by Professional in the interruption and resumption of Professional's services.

3.03   <u>Termination by Professional</u>.  Failure by Owner to make payments to Professional within forty five (45) days of the date posted, in accordance with this Agreement, shall be considered substantial nonperformance and cause for either termination or suspension of work by Professional.



3.04   <u>Payment Upon Termination</u>.  If Professional is terminated pursuant to the terms of this Article III for reasons other than a default or breach by Professional, Owner shall pay to Professional in full and final payment of any and all claims, including but not limited to, lost profits, job administrative or company overhead, and any other claims whatsoever which Professional may have by reason of the Services performed to the date of receipt of such notice of termination and by reason of cancellation of the remaining Services under this Agreement, an amount equal to (a) that portion of the Basic Compensation applicable to any phase or items of work completed and approved in accordance with the terms of this Agreement plus, (b) an amount for any Additional Services applicable to any phase or items of work completed to the extent same were authorized by Owner pursuant to the terms of this Agreement, plus (c) the amount, if any, of Reimbursable Expenses incurred up to the date of receipt of such notice, to the extent reimbursable under this Agreement.  Professional shall be paid for items of work partially completed on the basis of hours expended at the stipulated hourly rates set forth in <u>Exhibit "B"</u>, but in no case shall the amount thereof exceed the percentage of completion times the Basic Compensation set forth on <u>Exhibit "B"</u>, less any previous payments.  Said percentage of completion shall be determined mutually by Professional and Owner.  Notwithstanding the foregoing, if Professional has been negligent or has breached its obligations hereunder, Professional shall only be entitled to recover compensation in accordance with Section 7.02 below.

3.05   <u>Submittal of Reports</u>.  Upon any termination of this Agreement, Professional shall immediately deliver to Owner a written status report of the work

completed to date, together with possession of the Project Documents (as defined in Article V below), provided Owner pays Professional in accordance with Section 3.02 above for all undisputed Services. Such reports shall be accompanied by a release of all claims for Services. Materials so delivered shall be the property of Owner subject to the provisions of Article V below. If Owner desires Professional's services to be completed by others after any termination of this Agreement, Professional shall at the request of Owner notify in writing any other consultant designated by Owner that Professional has no ownership interest in such Project Documents, and that Owner owns the Project Documents and is unconditionally entitled to use the Project Documents to complete the Project. Professional agrees to execute such documents as necessary to implement the foregoing.

3.06    Suspension of Work. Upon written notification from Owner to Professional to suspend any portion of the Services hereunder, Professional shall immediately suspend work on any designated portion. Upon receipt of any written notification to suspend work, Professional shall immediately confirm in a written notice to Owner the instruction to suspend the work.

ARTICLE IV

PROFESSIONAL'S REPRESENTATIONS AND COVENANTS

4.01    Professional's Qualification. Professional represents to Owner that Professional has the skill and professional competence, financial solvency and resources, expertise, qualifications, appropriate licenses and experience to undertake the obligations imposed by this Agreement and imposed by the necessary requirements of a project of the magnitude of the Project. Professional understands that Owner has relied upon this representation without independent investigation as a material inducement to enter into this Agreement.

4.02    Compliance with Law. The Services and the Project Documents shall, consistent with the applicable professional standard of care, comply with all applicable laws, building codes, regulations, ordinances, rules and requirements of, and conditions of any approvals, or permits given by, all Authorities including, without limitation, all applicable building codes and regulations, the applicable regulations and guidelines of the Americans With Disabilities Act, and all other applicable environmental, health and/or safety laws and regulations which bear upon the performance of Professional's services, as the same have been or are hereafter amended during the Term of this Agreement. All design work performed by Professional shall comply with the applicable regulations and guidelines of the Americans with Disabilities Act in effect as of the date such work is performed. Professional shall be responsible for all costs and damages incurred by Owner to the extent caused by the Professional's negligence in connection with the Professional's interpretation and application of such laws, building codes, regulations, ordinances, rules and requirements. Professional shall promptly notify Owner if there shall be any amendments to, modifications of, or regulations issued in connection with the Americans with Disabilities Act or any other applicable laws which will require any



modification of work previously performed by Professional or which Professional otherwise believes will require Additional Services.

4.03   Royalties and Patents. If any design, devise, material or process covered by patent or copyright is used by Professional, Professional shall obtain all necessary licenses and authorizations to use the same, and shall hold harmless Owner from any and all loss or expense arising out of or in connection with the use of such devise, design, material or process. This Section 4.03 shall not apply to any products which are specified by Professional for the Project if such items are manufactured by others.

4.04   Work Performed in Professional Manner. Professional shall exercise a degree of care and diligence in the rendition of all Services under this Agreement in accordance with the highest professional standards prevailing in the San Francisco, California area for similarly situated professionals.

Consistent with the Architect's standard of care, the Architect's services shall respond to the applicable laws, rules, codes, regulations and orders of any governmental or public authority having jurisdiction over the project in force at the time of the Construction Documents for Building Permit.

Notwithstanding any other provision in the Agreement to the contrary, nothing contained herein shall be construed:

(a) to constitute a guarantee, warranty or assurance either express or implied, that the Architect's services will yield or accomplish a perfect outcome for the Project;:

(b) to obligate the Architect to exercise professional skill or judgment greater than that which can reasonably be expected from other architects under similar conditions.   Although the Architect may act as the Client's representative pursuant to the authority granted in this Agreement, the Client and Architect expressly agree that the Architect's standard of care when acting as the Client's representative is the negligence standard and not a fiduciary standard of care; or

(c) as an assumption by the Architect of the liability of any other party.

Professional shall be responsible for the performance of the work of all other consultants and parties, contractors and subcontractors engaged by Professional (including without limitation all mechanical, electrical and structural engineers and design professionals), including the maintenance of schedules, coordination of their work and resolution of all differences among them. All such consultants, contractors, subcontractors, and parties engaged by Professional shall be independent contractors hired by Professional and not by Owner, and Professional is responsible for the quality of the work of all such parties.





4.05   <u>Conditions of Work</u>. Professional's duly authorized representative has visited the Project site, familiarized itself with governmental requirements relating to its Services and the local conditions under which the Services required hereunder are to be performed and coordinated its observations with all of the requirements for the Professional's Services hereunder.

<div align="center">

ARTICLE V

OWNERSHIP AND USE OF PROJECT DOCUMENTS

</div>

All of the surveys, specifications, field data, test data, plans, CAD materials, prints, molds, drawings, designs and specifications, sketches, photographs, presentations, renderings relating to the Professional's Services (collectively, the "Project Documents") are instruments of service and shall become, together with all copyright privileges, the property of Owner, provided Owner has compensated Professional in whole or in part for such Project Documents pursuant to the terms of this agreement.

Professional shall be permitted to retain copies, including reproducible copies and intermediate drafts, and any original field data as required by law.



Owner shall have the unrestricted right as owner of the Project Documents, without the consent of Professional, to use the Project Documents in connection with the Project or any other project; provided, however, if Owner uses the Project Documents in connection with another project in which Professional is not involved, Owner agrees to (i) remove Professional's name from the title block of any of the Project Documents and (ii) indemnify, defend and hold Professional harmless from and against any and all losses, liabilities, damages, actions, causes of action, costs and expenses, including, without limitation, reasonable attorneys' fees and costs incurred by Professional arising out of or relating to the use by Owner or others through the Owner of any of the Project Documents in connection with such other project.

Owner also agrees that if any of the Project Documents are modified in connection with this Project and Professional is not retained to provide services in connection with such modification, Owner shall indemnify, defend and hold Professional harmless from and against any and all losses, liabilities, damages, actions, causes of action, costs and expenses, including, without limitation, reasonable attorneys' fees and costs incurred by Professional and arising out of (but only to the extent of) such modification; provided, however, nothing herein shall be deemed to release Professional from liability for that portion of Project Documents prepared by Professional, its employees, consultants or subcontractors which were not modified.

Owner acknowledges, however , that Professionals partial services are by definition not complete and will be evaluated in that context.



## ARTICLE VI

### INSURANCE AND INDEMNITY

6.01    Insurance Types.

(a)    Professional shall not commence any Services until it obtains all insurance required to be obtained by Professional under this Agreement. Professional will not permit any consultants or subcontractors to commence any portion of the Services on the Project until the insurance requirements described in Section 6.12 below have also been complied with by such consultants and subcontractors or until Owner has approved, in writing, any lesser insurance for such consultants and subcontractors.

(b)    All insurance described under this Article VI to be carried by Professional will be maintained by Professional at its expense with insurance carriers licensed and approved to do business in the state in which the Project is located, having a general policyholders rating of not less than an "A minus" ("A-") and financial rating of not less than "VIII" in the most current Best's Key Rating Guide. In no event will such insurance be terminated or otherwise allowed to lapse prior to termination of the Agreement or such longer period as may be specified herein. Professional may provide the insurance described in this Article VI in whole or in part through a policy or policies covering other liabilities and projects of Professional; provided, however, that any such policy or policies shall: (a) allocate to the Project the full amount of insurance required hereunder (other than with respect to the professional liability coverage required pursuant to Section 6.08), and (b) contain, permit or otherwise unconditionally authorize the waiver contained in Section 6.09.



6.02    Evidence of Insurance. As evidence of specified insurance coverage, Professional shall deliver and Owner will accept certificates issued by Professional's insurance carrier applicable to Owner showing such policies in force for the specified period, but Owner has the right to require Professional to submit for Owner's review certified policies as reasonably necessary. Such evidence shall be delivered to Owner promptly upon execution of this Agreement or prior to commencement of Services, whichever earliest occurs. Each policy and certificate shall be subject to reasonable approval by Owner and shall provide that such policy shall not be subject to cancellation or material alteration to the detriment of Owner or Professional without thirty (30) days prior notice in writing to Owner. Should any policy expire or be canceled before the expiration of this Agreement and should Professional fail immediately to procure other insurance as specified, Owner reserves the right, but shall have no obligation, to procure such insurance and to deduct the cost thereof from any sum due Professional under this Agreement. Professional shall also allow Owner to inspect such evidence of insurance Professional obtains from any and all subconsultants and subcontractors.



6.03    Damages. Nothing contained in these insurance requirements is to be construed as limiting the type, quality or quantity of insurance Professional should maintain or the extent of Professional's responsibility or liability for payment of damages resulting from its operations under this Agreement or at law.

6.04    Insurance Types and Amounts. Professional shall maintain the following insurance during the term of this Agreement.

(a)    Worker's Compensation. Worker's Compensation and Employer's Liability insurance as prescribed by applicable law. Employer's Liability of $1,000,000 each Accident. $1,000,000 Disease – each employee, and $1,000,000 Disease Policy.

(b)    General Liability. Commercial General Liability Insurance (bodily injury and property damage) on an occurrence basis, with contractual liability insurance to cover liability assumed by Professional under this Contract. Coverage shall include Premises and Operations and Products and Completed Operations, includes Explosion, Collapse or Underground and Independent Consultants. The limits of liability of such insurance shall not be less than $1,000,000 each occurrence; $2,000,000 General Aggregate; $1,000,000 Products & Completed Operations Aggregate; and $1,000,000 Personal & Advertising Injury.

(c)    Automobile Liability. Automobile Bodily Injury and Property Damage Liability Insurance, covering owned, non-owned and hired automobiles, the limits of which shall be not less than $1,000,000 per person; $1,000,000 per occurrence for Bodily Injury and $1,000,000 per occurrence for Property Damage; or $1,000,000 per occurrence Combined Single Limit.

(d)    Errors and Omissions. Professional errors and omissions insurance of not less than $1,000,000 in the aggregate for all claims during any single policy year. Coverage shall also contain Contractual Liability. Errors and omissions coverage shall remain in full force and effect from the commencement of this Agreement until two (2) years following the expiration or earlier termination of this Agreement.

6.05    Waiver of Subrogation. Professional hereby waives all rights against Owner for damages caused by fire and other perils and risks to the extent covered by Professional's required policies of insurance. All policies of insurance (other than the insurance required under Section 6.04 (d)) required herein shall contain a provision under which the insurance carrier waives its right of subrogation with respect to Owner and other parties specifically listed as additional insured in Section 6.06 below.



6.06    <u>Additional Insured</u>.  Owner shall be included as an additional insured under the coverage specified in Sections 6.04 (b) and 6.04 (c), with the following endorsement or provision included within each applicable policy: "It is understood and agreed that coverage afforded by this policy shall also apply to LNR-Lennar Brannan Street, LLC, and its officers, directors, agents, employees, divisions, subsidiaries, shareholders, partners and affiliated companies, any lender with an interest in said Project, all other parties listed as Indemnified Parties under Section 6.07 of the Professional Services Agreement with LNR-Lennar Brannan Street, LLC and the following parties:  LNR Property Corporation, Lennar Partners, and Mariposa Management Company, all as additional insured, but only with respect to legal liabilities or claims caused by, arising out of or resulting from the acts or omissions of the named insured or of others performed on behalf of the named insured.  This Insurance is primary and any other insurance maintained by such additional insiders is noncontributing with this insurance as respects claims or liability arising out of or resulting from the acts or omissions of the named insured, or of others performed on behalf of the named insured".

6.07    <u>Indemnity</u>.  Professional shall indemnify, defend, and hold harmless Owner and all subsidiary or affiliated companies of Owner and all of such parties' representatives, partners, stockholders, officers, directors, and employees and their respective heirs, executors, administrators, successors, and assigns (collectively, the "Owner Parties"), all other persons or entities designated as additional insureds in Section 6.06 above, and Owner's lender(s) (the Owner Parties, the other parties listed as additional insureds in Section 6.06 above and the Owner's lender(s) shall be collectively referred to as the "Indemnified Parties"), from and against claims, losses, costs, liabilities and demands to the extent covered by Professional's Commercial General Liability Policy and arising out of or resulting from  injury to, or death of, any persons whatsoever or damage to property of any kind by the activities at or upon the Project by Professional, its agents, employees, subconsultants or any other person directly or indirectly employed by them.  In addition, Professional shall indemnify and hold harmless (but shall not be obligated to defend) Owner and all other Indemnified Parties from and against losses, costs and liabilities of any nature whatsoever including losses, costs and liabilities arising out of damage to property of Owner, injury to, or death of, any persons whatsoever or damage to property of any kind) to the extent caused by the negligent acts, errors or omissions of Professional, its agents, employees, subconsultants or any other person directly or indirectly employed by them in the performance of the professional services pursuant to this Agreement.

Notwithstanding the foregoing, Professional shall not be obligated to indemnify Owner for any claims, costs, losses, damages or liabilities which arise out of the negligent errors, acts or omissions of Owner or any contractor or subcontractor employed or retained directly by Owner and Owner shall indemnify and hold harmless Professional from losses, costs, claims, damages, liabilities and attorneys' fees which Professional incurs as a result of any negligent errors, acts or omissions of Owner or any contractor or subcontractor employed or retained directly by Owner. The indemnities of both Owner and Professional set forth in this section shall apply during the term of this Agreement (or Professional's performance thereof) and shall survive the





expiration or termination of this Agreement until such time as action against any indemnified Party on account of any matter covered by such indemnity is barred by the applicable statute of limitations.

6.8    Consultant and Subcontractor Insurance. Professional shall not allow any consultant or subconsultant to commence any work or perform any portion of the Services until Professional obtains from such consultant or subconsultant the exact insurance required to be carried by Professional under this Article VI including, but not limited to, (a) insurance with carriers meeting the standards of Section 6.01, (b) evidence of insurance to be submitted to Owner in accordance with Section 6.02, (c) the type and amount of coverage required by Section 6.04 (a) through (d), (d) a waiver of subrogation in favor of Owner and the other designated parties in accordance with Section 6.05, and (e) the additional insured endorsement or provision with the specific language required in Section 6.06. Professional shall also obtain from any such consultant or subconsultant an indemnification in form and substance identical to the indemnity set forth in Section 6.07, with the modification that such indemnity be from the consultant or subconsultant for the benefit of the parties designated as Indemnified Parties in Section 6.07.

ARTICLE VII

MISCELLANEOUS PROVISIONS

7.01    Governing Law. This Agreement shall be governed by the laws of the State of California.



7.02    Default of Professional. The failure of Professional to perform Professional's obligations or any of them hereunder and/or to comply with the covenants, conditions and provisions hereof shall constitute a default by Professional. In the event of such a default, Owner shall give a written notice thereof to Professional and shall direct Professional to cure said default within a reasonable period of time (which period of time shall not be less than twenty (20) business days), which period of time shall be specified in the notice of default. If Professional fails to cure said default within the time specified, Owner may, at its own option, give a written notice to Professional that Professional is in breach of this Agreement, or elect in owners sole discretion to extend said cure period. In the event of such breach and notice thereof, Owner may pursue one or more of the following remedies, all of which shall be cumulative. Owner may:  (a) terminate this Agreement; (b) commence an action for damages arising out of such breach; (c) withhold the payment of any monies due Professional until the default and breach of Professional has been cured; or (d) pay or withhold from monies due Professional all sums due any such persons, firms or other entities to whom Professional may be obligated where such obligations are attributable to the Project and when such obligations are, or might become, a lien upon the Project pursuant to applicable law.



7.03    Attorneys' Fees. Should any claim, action or proceeding be commenced between the parties hereto or their representatives concerning any provision of





this Agreement or the rights and duties of any person or entity in relation thereto, the party prevailing in such claim, action or proceeding, as the case may be, whether by out-of-court settlement or final judgment, shall be entitled, in addition to such other relief as may be granted, to the reasonable sum for attorneys' fees, expert witness and consulting fees, court costs and all other costs incurred in such action or proceeding and any appeals in connection therewith. For purposes of this provision, "prevailing party" shall include a party which dismisses an action for recovery hereunder in exchange for payment of the sum allegedly due, performance of convenants allegedly breached, or consideration substantially equal to the relief sought in the action or proceeding. Any judgment or order entered in any final judgment shall contain a specific provision providing for the recovery of all costs and expenses of suit including, without limitation, reasonable attomeys' fees and accounting, expert and consultant fees and all other costs and expenses incurred in connection with (a) enforcing, perfecting and executing such judgment, (b) post-judgment motions, (c) contempt proceedings, (d) garnishment, levy, and debtor and third-party examinations, (e) discovery, and (f) bankruptcy litigation.

      7.04   <u>Professional's Duty to Complete Work</u>. During all disputes, actions, claims or other matters arising out of or relating to this Agreement or the breach thereof, Professional shall carry on its duties hereunder, provided Owner is not in default in its obligation to pay Professional pursuant to the provisions of this Agreement.



      7.05   <u>Additions, Changes and Modifications to Agreement</u>. The terms and conditions of this Agreement and other contract documents are not subject to addition, change or modification unless such change, addition or modification is made in writing by a duly authorized representative of Owner as herein stated and approved by Tenant in writing. IN NO EVENT SHALL THE PROFESSIONAL RECEIVE ANY COMPENSATION IN EXCESS OF THE MAXIMUM PRICE,NOR SHALL PROFESSIONAL BE ENTITLED TO RECEIVE ANY COMPENSATION FOR ADDITIONAL SERVICES WHETHER PARTIALLY OR FULLY COMPLETED OR SIMPLY PROPOSED, UNLESS SUCH ADDITIONAL WORK IS AUTHORIZED BY A WRITTEN CHANGE ORDER IN A FORM ACCEPTABLE AND SIGNED BY OWNER. No addition, change or modification made as herein provided shall void this Agreement. The duly authorized representatives of Owner ("Owner's Representatives") authorized to execute a binding Agreement to add, change or modify this Agreement are any one (1) of the following:

1.    David O. Team
2.    Daniel C. Grable
3.    _____
4.    _____

      7.06   <u>Time</u>. Subject to the provisions of Section 1.04 above, time is of the essence of each and every term and condition of this Agreement.



7.07 <u>Liens</u>. Professional shall pay when due all claims for services or labor incurred at its instance or request in the performance of this Agreement including without limitation, all claims by all subconsultants including all structural, mechanical and electrical engineers. If, in the performance of Professional's work, any mechanic's liens, stop notices, attachments, garnishments or suits affecting title to real property are filed by Professional's consultants or parties for which Professional is responsible (except when such lien or stop notice is caused by Owner's default in its obligation to pay Professional pursuant to the provisions of this Agreement) against the Project, the site on which the Project is located, or any portion thereof, in connection with claims for services or labor incurred at the instance or request of Professional in the performance of this Agreement, Professional shall remove such lien when filed or within five (5) days after written demand by Owner, cause the effect of such lien, stop notice, attachment or suit to be removed from the Project, the site or any portion thereof in a manner satisfactory to Owner. If Professional fails to cause the removal of any lien, stop notice, attachment or suit in accordance with the foregoing, Owner is hereby authorized to take whatever actions it deems necessary to cause the lien, stop notice, attachment or suit, together with its effect upon said title, to be removed, discharged, satisfied, compromised or dismissed, and the cost thereof, including, without limitation, actual attorneys' fees incurred by Owner, shall become immediately due from Professional to Owner. Professional may contest any such lien, attachment or suit, provided it shall cause the effect to be removed from the Project or any part thereof.

7.08 <u>Service of Notice</u>. All notices or other communications required or permitted hereunder shall be in writing, and shall be delivered or sent, as the case may be, by any of the following methods: (i) personal delivery; (ii) overnight commercial carrier or delivery service; (iii) registered or certified mail (with postage prepaid and return receipt requested) or regular first class mail with postage prepaid; or (iv) telecopy/fax. Any such notice or other communication shall be deemed received and effective upon the earlier of (i) if personally delivered, the date of delivery to the address of the party to receive such notice; (ii) if delivered by overnight commercial carrier or delivery service, one day following the receipt of such communication by such carrier or service from the sender, as shown on the sender's delivery invoice from such carrier or service, as the case may be; (iii) if mailed, within seventy-two (72) hours after delivery to the U.S. Post Office, or when actually received, if sooner; or (iv) if given by telecopy/fax, when sent to the correct telecopy/fax number of the party to receive such notice. Any notice or other communication sent by telecopy/fax must be confirmed within forty-eight (48) hours by letter mailed or delivered in accordance with the foregoing. Any reference herein to the date of receipt, delivery, or giving, as the case may be, of any notice or other communication shall refer to the date such communication becomes effective under the terms of this section. The addresses for purposes of the giving of notices hereunder are set forth on the signature page of this Agreement. Notice of change of address shall be given by written notice in the manner detailed in this section.

7.09 <u>Waiver of Provisions</u>. If at any time Owner or Professional, as the case may be, shall have consented to any waiver, modification or alleged breach by the other party of any covenant, condition or provision of this Agreement, Owner or





Professional, as the case may be, shall not thereafter be deemed to have consented to any further waiver, modification or alleged breach by the other party, whether new or continuing of the same or any other covenant, condition or provision of this Agreement.

7.10  Assignment.  Professional shall not, voluntarily or involuntarily, or by operation of law assign all, or any part, of this Agreement, nor any Services, nor any payments due or to become due hereunder, without first obtaining consent in writing from Owner, which consent may be withheld in Owner's sole and absolute discretion. Owner shall at its sole discretion have the right to assign its interest in this Agreement at any time without the prior consent of Professional, and shall so notify Professional in writing.  Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the respective heirs, successors, administrators and assigns of the respective parties.

If Owner obtains construction financing for the Work, the Architect hereby consents to an assignment of this Agreement to the construction lender ("Lender") which is required as a condition to the Owners obtaining construction financing or disbursements thereunder.  In the event of a default by the Client, the Lender shall have the opportunity to cure such default prior to the termination of this Contract and after it assumes the rights and obligations of this Agreement shall have the right under the foregoing assignment to force this Agreement in accordance with its terms.  The Architect agrees that upon any Lender's election to exercise this option, the Architect will perform all acts required by the Architect to be performed under this Agreement directly for the Lender.  The Architect's agreement under the paragraph is conditioned upon the following: (i) the Lender shall have no greater rights under this Agreement than the Client had prior to default and (ii) upon the Lender's election to exercise its option under this paragraph, the Lender will perform all obligations of the Client which accrue under this Agreement including, but not limited to, full payment of all amounts due the Architect for all services performed and expenses incurred prior to the Client's default.  The rights of the Lender under this paragraph will extend to any assignee of the Lender, reasonably approved by the Architect, and shall create no obligation by the Lender to perform any obligation under this Agreement unless the Lender or its assignee shall expressly so elect. The Architect agrees to comply with the following requirements of the Lender and any reasonable requirements of any construction or building loan agreement which may now or hereafter be imposed with respect to construction of the Work and payment therefore if consistent with normal industry standards and if such requirements do not increase the Architect's liability beyond that set forth in this Agreement, including, but not limited to, requirements regarding the following:



(a) Documentation supporting requests for payment.

(b) Approval by Lender of plans, specifications and change orders, consultants, which approval shall not be unreasonably withheld or delayed; and



(c) Submission (with any request for payment) of conditional lien waivers in form or substance acceptable to the Lender covering the disbursement for which application is made.

7.11 <u>Entire Agreement</u>. This Agreement is entire and contains all of the rights, privileges and obligations of the parties and shall replace and supersede all prior negotiations, proposals, understandings, agreements, whether verbal, written or otherwise, if any, including letters of intent and proposals for services between Owner and Professional concerning the Project.

7.12 <u>Owner's Approval Right</u>. Owner shall have the right, in its sole discretion, to disapprove any portion of the Professional's Services on the Project which are inconsistent with the design and construction intent of the Project. The parties agree that the design and construction intent shall be established in the program for the Project. Owner is in no way responsible for any defects in the Project Documents submitted to, reviewed or approved by Owner, or for any defect in construction which has been or will be done arising out of defective Project Documents.

7.13 <u>Exhibits</u>. All <u>Exhibits</u> attached hereto are incorporated into this Agreement and made a part hereof.

7.14 <u>Confidentiality</u>. Pursuant to its duties as a publicly traded company or as an affiliate of LNR Property Corporation, a publicly traded company, Owner reserves the right to control and approve the method, manner and content of any and all public and private information disseminated by or generated with respect to Owner. During the course of Professionals performance of services for Owner, Professional will acquire and have access to public and private information, confidential information, proprietary information and trade secrets of Owner including, without limitation, information regarding properties owned or leased by Owner or which Owner intends to acquire or lease; development, marketing and disposition techniques, practices, strategies and plans; tenant, lender and financial investor/partner relationships and other matters relating to the project for which Professional has been engaged by Owner or which are totally unrelated to such project (collectively, "Company Information"). Any and all such Company Information is disclosed to Professional on a business need-to-know basis only, and is considered confidential and proprietary by Owner. Furthermore, any and all such Company Information is made known to Professional in confidence solely by virtue of Owner's engagement of Professional to perform services for Owner, and may not be available generally to the public. Except as required in the performance by Professional of its duties for Owner, Professional shall not at any time during or after the term of Professionals engagement, directly or indirectly, use, disseminate, disclose or publish any Company Information (including, without limitation, in the course of or in connection with making any presentations or marketing materials regarding Professionals service capabilities), unless and until such Company Information has become a matter of public knowledge through no fault of Professional, or unless required by court order to comply with law. Without limiting the foregoing,





Owner will manage all media and press relation services regarding all projects for which Professional is engaged. Owner must approve, in writing, all materials and Company Information as well as the manner of presentation of any such materials and Company Information relating to or mentioning Owner or the project including, without limitation, all news releases, articles, press announcements, media interviews and conversations with any media representatives. Any breach by Professional of any provisions of this paragraph shall entitle Owner to terminate this Agreement and, without prejudice to any rights and remedies as may be available to Owner at law or in equity by reason of such breach, Owner shall be entitled to equitable relief including injunction and Owner shall be entitled to have and recover from Professional Owner's reasonable attorneys' fees and costs in connection with any action arising out of any breach by Professional of any provisions of this paragraph.

7.15. <u>Prohibited Activities</u>. Neither Professional nor any partner, director, employee, or agent of Professional, as applicable, nor any sub-consultant of Professional or any partner, director, employee or agent of such sub-consultant shall, without specific written authorization of Owner:

(a)    <u>Commissions</u>. Give or receive any commission, fee, rebate, gift or entertainment of significant cost or value to any person or entity in connection with or as a result of Professional's Services provided hereunder;



(b)    <u>Business Dealings with Affiliates</u>. Enter into any business arrangement with any partner, employee or agent of Owner, or any affiliate of same other than as a representative of Owner or such affiliate in accordance with this Agreement and with the prior written approval of Owner;

(c)    <u>Gratuities</u>. Make any payment or give anything else of value, to any government official, including any officer or employee of any government, department, agency or instrumentality, to influence any decision, or to gain any other advantage for Owner or Professional; or

(d)    <u>Conflict of Interest</u>. Engage in any employment or enter into any contract or agreement which conflicts with Professional's obligations under this Agreement.

Professional agrees to notify Owner immediately of any violation of this Section 7.15. In the event of a violation of Subsection 7.15(a) above, Professional shall pay to Owner any and all amounts received by Professional or any other individual or entity described above in violation of Subsection 7.15(a), however, such payment shall not limit, or operate as a waiver of, any other legal or equitable rights which Owner may have against Professional at law or under this Agreement. It is further agreed that Professional shall indemnify, defend and hold Owner and its affiliates, employees, partners, and agents harmless against any and all loss, liability, damage, expense arising out of, or relating to any breach of this Section 7.15. If Owner terminates this Agreement due to Professional's breach of this Section 7.15, Professional agrees that



Professional shall not be paid Professional's Compensation for Services performed prior to the termination date, or receive reimbursement for any Reimbursable Expenses incurred prior to the termination date.

7.16   Obligations to Third Parties.  The execution and delivery of this Agreement shall not be deemed to confer any rights upon, nor obligate the Owner, to any person or entity other than Professional.

7.17   Previous Services.  Notwithstanding the fact that this Agreement is executed as of the date first set forth above, the parties recognize that a portion of the work and Services required hereunder may have been performed prior to such date, all of which work and Services shall be governed by the terms and conditions of this Agreement and shall be deemed to be a part of Professional's Basic Services hereunder. Professional shall not be entitled to any compensation for such prior activities and Services except as expressly provided herein. Without limiting the foregoing, all of Professional's liabilities and obligations to Owner hereunder shall apply to all work and Services provided by Professional prior hereto, notwithstanding the fact that such work or Services may have been performed prior to the date hereof pursuant to prior negotiations, representations, agreements, understandings or otherwise.



7.18   Survival.  All representations and covenants made or given by Professional in this Agreement, together with any and all causes of action and other rights and remedies which Owner may have as a result of breach of any term, condition, representation, or covenant of Professional pursuant to this Agreement, shall survive as provided for under applicable California law.

7.19   Arbitration of Disputes.  All claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall first be subject to mediation under the auspices of a recognized, neutral third-party professional mediation service experienced in handling construction disputes, or other mediation method or service acceptable to the parties, prior to undertaking any other dispute resolution action. The cost of the mediation service shall be borne equally by the parties. A demand for mediation shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for mediation be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by any applicable statutes of limitations. In the event the parties are unable to resolve their dispute through mediation, either party may submit the dispute to arbitration pursuant to this paragraph 7.19.

In the event of an arbitrable dispute between the parties relating to the rights and obligations of the parties in connection with any matter relating to or connected with this Agreement, the matter will be submitted to binding arbitration. Arbitrable disputes include any controversy or claim between the parties, including any claim based on contract, tort, or statute, arising out of or relating to the Services or any



other aspect of the transaction evidenced by this Agreement. The arbitrator shall determine any controversy regarding whether a dispute is an arbitrable dispute.

(a)   Arbitrator.  The arbitration shall be conducted by a summary dispute resolution company mutually selected by Owner and Professional or by arbitration conducted by and in accordance with the rules of the American Arbitration Association ("AAA") as herein modified.  In either case, there shall be only one arbitrator who shall be selected by mutual agreement of the parties, failing which the selection shall be made by AAA.

(b)   Arbitration Rules.  The rules to be followed in the arbitration are as follows:  Claims comprising the petition for arbitration shall be submitted in the form of a complaint, prepared in conformance with the applicable code of civil procedure for the state in which the Project is situated, filed with the service or association which will be conducting the arbitration, with copies personally served on all responding parties.  The respondent will have thirty (30) days to file a response which will take the form of an answer, prepared in conformance with the applicable code of civil procedure for the state in which the Project is situated.  No demurrers, motions to strike, or prehearing motions will be permitted.  The arbitrator will set the matters at issue for hearing.  Within twenty (20) days of the filing of the response to the claim, the arbitrator will schedule, upon mutual agreement of the parties, a prehearing conference, discovery and hearing dates.  If parties are unable to agree, the arbitrator will set the appropriate dates.  The parties shall be allowed to conduct discovery under the applicable provisions of the applicable code of civil procedure for the state in which the Project is situated.  Any disputes concerning discovery shall be submitted to the arbitrator and attorneys fees will be awarded to the party prevailing at hearing of any discovery dispute, regardless of which party ultimately prevails in the matter.  At the arbitration hearing, order of proof shall be governed by the applicable code of civil procedure unless the parties mutually agree otherwise.  Admissibility of evidence will be governed by the applicable evidence code for the state in which the Project is situated.

(c)   Decision/Remedies.  The arbitrator shall comply with, and the decision of the arbitrator shall be rendered in accordance with, the law of the state in which the Project is located.  The arbitrator shall have the power to grant all legal and equitable remedies and award compensatory damages provided by such state law, but shall not have the power to award punitive damages.  The parties agree to be bound by the decision of the arbitrator, which shall be final, shall not be appealable, and which shall allow for no trial de novo on the same issues.  The arbitrator's decision shall be rendered within thirty (30) days following submission of the matter at issue, but the failure to comply with this provision shall in no way invalidate any decision or award as may be rendered more than thirty (30) days after submission.

(d)    <u>Miscellaneous</u>.  Upon the rendering of the decision or award, the prevailing parties shall be entitled to reasonable costs and attorneys' fees. Judgment upon any award may be entered in any court having jurisdiction or applications may be made to such court for judicial acceptance of the award and an order of enforcement.  Nothing in this Section shall constitute a waiver of any of the benefits of statute of limitations or equitable defense by any Party.  The parties intend that this agreement to arbitrate be valid, binding, enforceable and irrevocable.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

"OWNER"                      LNR-Lennar Brannan Street, LLC,
                             a California Limited Liability Company

                             By: _____
                             Name: Daniel C. Grable
                             Title: _____

                             By: _____
                             Name: _____
                             Title: _____

"PROFESSIONAL"               MBH Architects, Inc.
                             a California Professional Corporation

                             By: _John McNULTY_____
                             Name: _____
                             Title: _PRINCIPAL_____

                             By: _____
                             Name: _____
                             Title: _____



# EXHIBIT "A"



## EXHIBIT A

### SUMMARY SHEET TO
### PROFESSIONAL SERVICES AGREEMENT

Professional: <u>MBH Architects</u>

Contract No.: <u>11001</u>

Date of Professional Services Agreement: _____, 1999

Re: See Scope of Improvements in Project Description in attached
Exhibit B

---

SEE <u>EXHIBIT B</u> ATTACHED HERETO AND MADE PART HEREOF FOR COMPLETE
SCOPE OF WORK AND COST ESTIMATE. WHERE THE TERMS CONTAINED IN
THIS <u>EXHIBIT A</u> MAY CONFLICT WITH THE TERMS OF THE GENERAL
AGREEMENT FOR CONSULTING SERVICES OR <u>EXHIBIT B</u>, THE "GENERAL
AGREEMENT FOR CONSULTING SERVICES" AND <u>EXHIBIT B</u> SHALL CONTROL.

---

FEE SUMMARY: _____

Compensation for Services:      [  ]      Hourly @ $_____ per hour

See <u>Exhibit B</u> herein

[X]    Other: Total compensation for this Project shall not exceed a maximum of
$ 2,511,000.00 without the express written consent of Owner.

Manner of Payment of Compensation:   [ x ] Monthly

[  ] Other:

Time Periods: Date for Commencement of Services: <u>February 4, 1999</u>

Date for Completion of Services: <u>TBD</u>, 1999

Other (Dates of meetings, inspection, deadlines, etc.): TBD

Submit to:    Accounting Dept.

Mariposa Management Company

2727 Mariposa Street

Suite 201

San Francisco, California  94110

[  ] Other: _____

Insurance Policy Limits:    [X ] As specified in Agreement

[   ] Other specified below

Commercial General Liability:    $_____ per occurrence

Automobile:    $ _____ per person,

$_____ per occurrence/bodily injury

$_____ per occurrence/property damage

Errors & Omissions  $_____ for all claims during policy year

Miscellaneous:  Please reference Contract Number:  11001, and include professional services and reimbursable expenses, with backup on all invoices when submitting for payment.



# EXHIBIT B

## SCOPE OF BASIC SERVICES;TERMS AND CONDITIONS

This <u>Exhibit B</u> is attached to and made a part of that certain Professional Services Agreement dated as of _____ (the "Agreement"), between LNR-Lennar Brannan Street, LLC ("Owner"), and MBH Architects, Inc. ("Professional"). Unless otherwise provided herein, all capitalized terms contained herein shall have the meaning ascribed to such terms in the Agreement.

<u>Project Description:</u>

<u>Scope of Improvements</u>

Site 1 Lot 25 Parcel II/Gallo/250Brannan

The current goal is to adaptively renovate the building and remove the existing first floor south of the existing fire wall. This will allow for the required headroom between the basement and second floor so that leasable commercial *(multi-media production)* space can be marketed in the front area building. The Owner wishes to explore the possibility of parking at the basement level at the rear if the building. This will require convincing the Building Department of certain "in lieu" upgrades to compensate for a parking use within a timber building. In order to function it will also require the removal of several rows of timber columns. The scope of work will include seismic, accessibility and infrastructure upgrades along with new lobbies and stairs. A very definite desire on the Developers list is the sandblasting of the existing wood structure.

Lot 24 Parcel I/The Corner/200 Brannan

This corner property will be the location of the new construction of residential condominiums. It is the Developer's intention to construct below grade parking above which a concrete podium will be constructed. Above the podium will be Type V housing.

Lot 18/One Federal

The plan is to perform seismic, infrastructure and accessibility upgrades to the building that will result in retail and parking at grade and condominiums at the upper levels.



Lot 15/The Gatehouse/41 Federal

The plan is to build a new five story (four levels above a podium) residential condominium building.

All of the above Proposed Scope of Improvements hereinafter collectively refereed to as, the "Project").

Owner and Professional agree as set forth below:

## ARTICLE 1
### PROFESSIONAL'S RESPONSIBILITIES

### 1.1    PROFESSIONAL'S SERVICES

1.1.1  Professional's "Services" consist of those services to be performed by Professional, Professional's employees and Professional's consultants as enumerated in Articles 2 and 3 of this <u>Exhibit B</u> and any other services included in this <u>Exhibit B</u> (collectively, the "Services" or the "Work"). The Services are summarized in the Summary Sheet to Professional Services Agreement attached thereto as <u>Exhibit A</u>. To the extent of any inconsistency between the description of the Services contained herein or in <u>Exhibit A</u>, the description contained in this <u>Exhibit B</u> shall control.

1.1.2  Professional's Services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work. Upon request of Owner, Professional shall submit for Owner's approval a schedule for the performance of Professional's Services which may be adjusted as the Project proceeds with the prior written consent of Owner, and shall include allowances for periods of time required for Owner's review and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by Owner shall not, except for reasonable cause, be exceeded by Professional or Owner.

## ARTICLE 2
### SCOPE OF PROFESSIONAL'S BASIC SERVICES

Professional's "Basic Services" include the services set forth in the Agreement, as well as the following services and all services reasonably inferable therefrom or incidental thereto.





## PHASE 1    VERIFYING EXISTING SITE CONDITIONS/TITLE 24 REQUIREMENTS

2.1.   Professional will walk the site/existing building to verify the existing site/building conditions.

2.1.1   Professional will incorporate all of the existing site conditions, outlets, lighting, HVAC and any special conditions into the CAD system to assure that the "As-Built" documents are accurate.

2.1.2   Professional will measure and document all conditions that will be affected by Title 24 requirements to be incorporated into the Construction Documents.

2.1.3   Professional will discuss all variations to Title 24 with the City of _San Francisco_____ to ascertain the most cost effective construction allowed by the City of _San Francisco.

2.1.4   Professional shall review with Owner any special conditions such as acoustical requirements, additional air conditioning or venting, computer rooms, equipment rooms, kitchens, unusual lighting plans, private telephone systems, etc.

2.1.5   Professional shall review the preliminary space plan with Owner and make any necessary minor revisions, additions, or deletions.  Upon completion, Professional shall provide a final space plan to Owner.

2.1.7   Professional, upon completion of the above, shall obtain Owner's approval by signature on the space plan.

## Phase 2    SCHEMATIC DESIGN PHASE

2.2.1   Professional shall prepare the design program in conjunction with Mariposa Management for review by Owner.

2.2.2   Professional shall provide a preliminary evaluation of the design program, schedule and construction budget requirements, each in terms of the other, subject to the limitations set forth in Subparagraph 5.2.1.

2.2.3   Professional shall review with Owner alternative approaches to design and construction of the Project.

2.2.4   Based on the mutually agreed-upon program, schedule and construction budget requirements, Professional shall prepare, for approval by Owner, "Schematic Design Documents" consisting of drawings and other documents illustrating the scale and relationship of Project components.



2.2.5  Professional shall submit to Owner a preliminary estimate of construction cost based on current area, volume or other unit costs.

Phase 3    DESIGN DEVELOPMENT PHASE

2.3.1  Based on the approved Schematic Design Documents and any adjustments authorized by Owner in the program, schedule or construction budget, Professional and Professionals Consultants shall prepare, for approval by Owner, "Design Development Documents" consisting of drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, material and such other elements as may be appropriate.

2.3.2  Professional shall advise Owner of any adjustments to the preliminary estimate of Construction Cost.

Phase 4    CONSTRUCTION DOCUMENTS PHASE

2.4.1  Based on the approved Design Development Documents and any further adjustments in the scope or quality of the Project or in the construction budget authorized by Owner, Professional shall prepare, for approval by Owner, "Construction Documents" consisting of drawings and specifications setting forth in detail the requirements for the construction of the Project.

2.4.2  Professional shall assist Owner in the preparation of the necessary bidding information, bidding forms, the conditions of the construction contract (the "Contract"), and the form of Contract between Owner and Contractor.

2.4.3  Professional shall advise Owner of any adjustments to previous preliminary estimates of construction cost indicated by changes in requirements or general market conditions.

2.4.4  Professional shall assist Owner in connection with Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

Phase 5    BIDDING OR NEGOTIATING PHASE

2.5.1  Professional, following Owner's approval of the Construction Documents and of the latest preliminary estimate of construction cost, shall assist Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.



Phase 6    CONSTRUCTION PHASE - ADMINISTRATION OF THE
           CONSTRUCTION CONTRACT

2.6.1  Professional's responsibility to provide Basic Services for the construction
       phase commences with the award of the Contract for construction and
       terminates at the earlier of the issuance to Owner of the final "Certificate
       for Payment" or 60 days after the date of substantial completion of the
       Work.

2.6.2  Professional shall provide administration of the Contract for Construction
       as set forth below and in the Contract.

2.6.3  The duties, responsibilities and limitations of authority of Professional
       shall not be restricted, modified or extended without written agreement of
       Owner and Professional.

2.6.4  Professional shall be a representative of and shall advise and consult with
       Owner: (1) during construction until final payment to the contractor is due
       andduring the correction period, to make 1 site inspection to develop a
       punch list and one inspection to insure completion of punchlist items and
       (2)as an Additional Service at Owner's direction from time to time during
       the correction period described in the Contract for construction.
       Professional shall have authority to act on behalf of Owner only to the
       extent provided in this Agreement unless otherwise modified by written
       instrument.

2.6.5  Professional shall visit the site at intervals appropriate to the stage of
       construction, but in no event less than weekly visits, or as otherwise
       agreed by Owner and Professional in writing to become generally familiar
       with the progress and quality of the Work completed and to determine in
       general if the Work is being performed in a manner indicating that the
       Work when completed will be in accordance with the Contract Documents.
       However, Professional shall not be required to make exhaustive or
       continuous on-site observations or inspections to check the quality or
       quantity of the Work. On the basis of on-site observations as an architect,
       Professional shall keep Owner informed of the progress and quality of the
       Work, and shall endeavor to guard Owner against defects and
       deficiencies in the Work. (More extensive site representation may be
       agreed to as an Additional Service, as described in the Agreement).

2.6.6  Professional shall not have control over or charge of and shall not be
       responsible for construction means, methods, techniques, sequences or
       procedures, or for safety precautions and programs in connection with the
       Work, since these are solely the Contractor's responsibility under the
       Contract for construction. Professional shall not be responsible for the
       Contractor's schedules or failure to carry out the Work in accordance with
       the Contract Documents. Professional shall not have control over or



charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

2.6.7 Professional shall at all times have access to the Work wherever it is in preparation or progress.

2.6.8 Communications by and with Professional's consultants shall be through Professional. Copies of all significant communications between Owner and Contractor shall be provided to Professional in a timely manner.

2.6.9 Based on Professional's observations and evaluations of the Contractor's applications for payment, Professional shall review and certify the amounts due the Contractor.

2.6.10 Professional's "Certification for Payment" shall constitute a representation to Owner, based on Professional's observations at the site and on the data comprising the Contractor's application for payment, that to the best of Professional's knowledge, information and belief, the Work has progressed to the point indicated and the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by Professional. The issuance of a Certificate for Payment shall further constitute a representation that the Contractor is entitled to payment in the amount certified.

2.6.11 Professional shall have authority to reject Work which does not conform to the Contract Documents. Whenever Professional considers it necessary or advisable for implementation of the intent of the Contract Documents, Professional will have authority to require additional inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of Professional nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of Professional to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons performing portions of the Work.

2.6.12 Professional shall review and approve or take other appropriate action upon Contractor's submittals such as "Shop Drawings", product data and samples, but only for the limited purpose of checking for conformance with information given and the design intent expressed in the Contract Documents. Professional's actions shall be taken with reasonable promptness while allowing sufficient time in Professional's professional



judgment to permit adequate review but in no event longer than two weeks.

2.6.13 Professional shall prepare change orders, with supporting documentation and data if deemed necessary by Professional in accordance with the terms of the Agreement, for Owner's approval and execution in accordance with the Contract Documents, and may authorize minor changes in the Work not involving an adjustment in the Contract price or an extension of the Contract schedule which are not inconsistent with the intent of the Contract Documents.

2.6.14 Professional shall conduct inspections to determine the date or dates of substantial completion and the date of final completion, shall receive and forward to Owner for Owner's review and records written warranties and related documents required by the Contract Documents and assembled by the Contractor including but not limited to owners manuals, maintenance manuals, guarantees, and as built construction documents, and shall issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

2.6.15 Professional shall interpret and decide matters concerning performance of Owner and Contractor under the requirements of the Contract Documents on written request of either Owner or Contractor. Professional's response to such requests shall be made with reasonable promptness and within any time limits agreed upon.



2.6.16 Interpretations and decisions of Professional shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and initial decisions, Professional shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions so rendered in good faith and consistent with the intent of the Contract documents.

2.6.17 Professional's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Contract Documents.

2.6.18 Professional shall render written decisions within a reasonable time on all claims, disputes or other matters in question between Owner and Contractor relating to the execution or progress of the Work as provided in the Contract Documents.

2.6.19 Professional's decisions on claims, disputes or other matters, including those in question between Owner and Contractor, shall be subject to mediation and/or arbitration as provided in the Agreement and in the Contract Documents.



# ARTICLE 3
## ADDITIONAL SERVICES

### 3.1    GENERAL

3.1.1   The services described in this Article 3 are not included in Basic Services, and they shall be paid for by Owner as provided in the Agreement, in addition to the compensation for Basic Services.

### 3.2    PROJECT REPRESENTATION BEYOND BASIC SERVICES

3.2.1   If Owner and Professional agree that more extensive representation for the Project than is described in the Agreement and this Exhibit B is required, Professional shall provide one or more Project representatives to assist in carrying out such additional on-site responsibilities.

3.2.2   Project Representatives shall be selected, employed and directed by Professional, and Professional shall be compensated therefor as agreed by Owner and Professional.

3.2.3   Through the observations by such Project Representatives, Professional shall endeavor to provide further protection for Owner against defects and deficiencies in the Work, but the furnishing of such project representation shall not modify the rights, responsibilities or obligations of Professional as described elsewhere in this Agreement.

### 3.3    ADDITIONAL SERVICES

3.3.1   Making revisions in Drawings, Specifications or other documents when such revisions are:

    1.    inconsistent with approvals or instructions previously given by Owner, including revisions made necessary by adjustments in Owner's program or Project budget;

    2.    required by the enactment, interpretation, or revision of codes, laws or regulations subsequent to the preparation of such documents; or

    3.    due to changes required as a result of Owner's failure to render decisions in a timely manner.

3.3.2   Providing services after issuance to Owner of the final Certificate for Payment, or in the absence of a final Certificate for Payment, more than 60 days after the date of Substantial Completion of the Work.

3.3.3   Providing services of consultants for other than architectural, structural, mechanical and electrical engineering, landscape, acoustical, and lighting portions of the Project provided as a part of Basic Services.





4.5    Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

4.6    Owner shall furnish the services of geotechnical engineers when such services are requested by Professional. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions including water conditions with reports and appropriate professional recommendations.

4.6.1    Owner shall furnish the services of other consultants when such services are reasonably required by the scope of the Project and are requested by Professional.

4.7    Owner shall furnish structural, mechanical, chemical, air and water pollution tests for hazardous materials, and other laboratory and environmental tests, inspections and reports as required by law or the Contract Documents.

4.8    Owner shall furnish all legal, accounting and insurance counseling services as may be necessary at any time for the Project, including auditing services Owner may require to verify the Contractor's Application for Payment or to ascertain how or for what purposes the Contractor has used the money paid by or on behalf of Owner.

4.9    The services, information, surveys and reports required by Article 4 shall be furnished at Owner's expense, and Professional shall be entitled to rely upon the accuracy and completeness thereof.

4.10    Prompt written notice shall be given by Owner to Professional if Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

PAYMENT SCHEDULE

BASIC COMPENSATION

    1.1   FOR BASIC SERVICES, Basic Compensation shall be computed as follows:

    1.1.1  For Basic Services for a fixed not to exceed fee, including Structural Engineering, Mechanical, Electrical, Plumbing and Fire Protection Design Build Performance Specifications, Civil Engineering, Landscape Architecture, Acoustical Consultant ,and Cod Consulting Services, compensation shall be a fixed fee of $2,511,000.00, which shall be payable in monthly increments based on Professional's monthly Applications for Payment for work completed.

    1.1.2  Where compensation is to be paid in progress payments for Basic Services as each phase of work completed, the total Basic Compensation shall be payable in the following percentage increments upon completion of each phase in question:

| | |
|---|---|
| Schematic Design Phase: | Fifteen Percent (15%) |
| Design Development Phase: | Fifteen Percent (15%) |
| Construction Documents Phase: | Forty Five Percent (45%) |
| Bidding or Negotiation Phase: | Two and 1/2 Percent (2.5%) |
| Construction Phase: | Twenty Two and 1/2 Percent (22.5%) |
| Total Basic Compensation: | One Hundred Percent (100%) |

    AN INITIAL PAYMENT of _____Zero_____ Dollars $(0) shall be made upon execution of the Agreement and credited to Owner's account at final payment.

ADDITIONAL SERVICES

    2.1   COMPENSATION FOR ADDITIONAL SERVICES

    2.1.1  FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES, compensation shall be on a time and materials basis in accordance with the attached Hourly Rate Schedule (Schedule B-1).

    2.1.2  FOR ADDITIONAL SERVICES OF CONSULTANTS, including additional structural, mechanical and electrical engineering services, the amounts billed to Professional for such services.



## REIMBURSABLE EXPENSES

3.1.1  FOR REIMBURSABLE EXPENSES, documented expenses incurred by Professional, Professional's employees and consultants in the interest of the Project.Reimbursable Expenses shall include the following:

Fees paid for securing approvals of authorities having jurisdiction of the Project;

Payment of invoices charged to Professional for incidental materials and furnishings for the Project, as authorized in writing;

Reproduction of documents for Owner by Professional, as requested by Owner, in writing;

Expenses of overtime work requiring higher than regular rates, if authorized, in writing, by Owner.

Expense of transportation in connection with the Project; expenses in connection with authorized out-of-town travel; long-distance communications; facsimile communications; courier services; express mail; and fees paid for securing approval of authorities having jurisdiction over the Project.



Expense of renderings, models and mock-ups requested by Owner.

Expense of photographic production techniques and photography and photo prints used for the Project or on behalf of the client.

UNLESS REIMBURSABLE EXPENSES ARE TO BE PAID TO PROFESSIONAL AS SPECIFICALLY AUTHORIZED IN THE AGREEMENT, THE BASIC COMPENSATION REPRESENTS THE TOTAL MAXIMUM COST TO OWNER, AS WELL AS THE TOTAL COMPENSATION TO PROFESSIONAL, ITS CONSULTANTS AND SUBCONTRACTORS FOR THE PERFORMANCE OF THE BASIC SERVICES AND PROFESSIONAL UNDERSTANDS AND AGREES THAT THE BASIC COMPENSATION SHALL INCLUDE ALL COSTS WHICH MAY BE INCURRED IN CONNECTION WITH THE PERFORMANCE OF THE BASIC SERVICES, INCLUDING, BUT NOT LIMITED TO, THE COST OF ALL PROFESSIONAL'S CONSULTANTS AND SUBCONSULTANTS, REQUIRED EQUIPMENT, RENTAL FEES, LABOR, OVERHEAD, PROFIT AND MATERIALS.



March 28, 2002

FAXED

Mr. Eric Golangco
Lennar Communities
3130 Crow Canyon Place, Suite 310
San Ramon, CA 94583

1115 Atlantic Avenue

Alameda, CA 94501

Tel 510.865.8663

Fax 510.865.1611

Re:    Agreement Between Lennar Brannan Street, LLC and MBH Architects

To Whom It May Concern:

LNR-Lennar Brannan Street, LLC ("Lennar") has asked MBH to agree to the first paragraph of Corus Bank, N.A.'s Architect's Consent and Agreement ("Consent"). MBH's concern is that long outstanding Additional Service Requests make the last sentence of the Consent's first paragraph factually incorrect. Lennar believes that the time required to resolve this issue will jeopardize its ability to quickly fund its pending construction loan, thus compromising Lennar's ability to meet a condition in Lennar's development agreement with the City of San Francisco. To accommodate Lennar and to allow MBH to, in good faith, make the requested statement required in the Consent's first paragraph, MBH proposes the following:

1.    Within 7 business days of MBH executing the Consent, Lennar will wire or issue a check into MBH's bank account $295,161.34, which represents monies currently due MBH. Monies invoiced but not received by MBH relating to McCluskey's services are not included in the above, but MBH is not releasing these amounts and the resolution of these monies is still an open issue. In addition to any other remedy available, if MBH does not receive $295,161.34 within 7 business days of MBH executing the Consent, irrespective of any term in the professional services agreement between Lennar and MBH, MBH shall have the right to suspend all of its services and Lennar agrees that MBH shall have no responsibility for damages or losses that may result from such a suspension of services.

2.    Upon MBH's receipt of an executed copy of this letter by Lennar, MBH will withdraw, subject to the terms below, its Additional Service Requests that total $598,264.00. This will allow MBH to make the statement required in the first paragraph of the Lender's Consent as originally proposed. So long as Lennar, in good faith, negotiates MBH's remaining applicable modifications to the Consent, MBH will, in turn, execute the Consent by March 28, 2002.

3.    Within 20 business days of MBH executing the Consent, principals of MBH and Lennar, with full settlement authority, will meet in good faith to discuss, and in earnest, resolve the withdrawn Additional Service Requests. If the parties cannot resolve the Additional Service Requests within 3 business days after the lapse of the above 20 days to the parties' mutual satisfaction, MBH shall have the right to reassert its Additional Service Requests and Lennar is hereby estopped to raise any objection or defense to MBH's right to reassert its right to be paid.

Mr. Eric Golangco
March 28, 2002
Page 2 of 2



4.  If MBH and Lennar cannot resolve the Additional Service Requests through the negotiation process described in Paragraph 3, the parties agree, in good faith, to mediate the Additional Service Requests within 45 days of MBH executing the Consent.

Sincerely,

MBH Architects

Dennis M. Heath
Founding Principal

Please indicate your approval of all the terms and conditions in this letter by signing below

Accepted & agreed:

LNR-Lennar Brannan Street, LLC
By: Lennar Southland I, Inc., a California corporation, its Managing Member

By: _____

Name: Michael White

Its: ___V. P.___

# EXHIBIT B

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| BRYCE D. CARROLL (SBN: 208593)        208593<br>MOLLY C. MACHOLD (SBN: 221005)<br>GORDON & REES, LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111<br>　TELEPHONE NO: (415) 986-5900　FAX NO. (Optional): (415) 986-8054<br>　E-MAIL ADDRESS (Optional): bcarroll@godonrees.com<br>　ATTORNEY FOR (Name): Bovis Land Lease, Inc. as assignee of LNR-Lennar Brannan St. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
　STREET ADDRESS: 400 McAllister Street
　MAILING ADDRESS:
　CITY AND ZIP CODE: San Francisco, CA 94102
　BRANCH NAME:

PLAINTIFF/PETITIONER: Bovis Land Lease, Inc. as Assignee of LNR Branna Street LLC

DEFENDANT/RESPONDENT: MBH Architects, Inc. aka McNulty Briskman Heath and Does 1-150

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CGC 07 464235 |
|---|---|

TO (insert name of party being served): Jennifer Becker of Long & Levit on behalf of MBH Architects, Inc.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: June 14, 2007

Bryce D. Carroll
　　　　　(TYPE OR PRINT NAME)

▶ _____
　(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. ☒ A copy of the summons and of the complaint.
2. ☒ Other (specify): Certificate of Merit, Civil Case Cover Sheet, Notice of Management Conference

(To be completed by recipient):

Date this form is signed: July 5, 2007

Jennifer Becker
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
John Sullivan for
　　Jennifer Becker
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)
Page 1 of 2

Form Adopted for Mandatory se
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT C

JENNIFER A. BECKER  State Bar # 121319
JOHN B. SULLIVAN  State Bar # 238306
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, CA  94104
TEL: (415) 397-2222   FAX: (415) 397-6392

jabecker@longlevit.com / jsullivan@longlevit.com

Attorneys for Defendant
MBH ARCHITECTS, INC. aka McNULTY
BRISKMAN HEATH

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BOVIS LEND LEASE, INC. as assignee of LNR-LENNAR BRANNAN STREET, LLC,<br><br>                          Plaintiff,<br><br>          vs.<br><br>MBH ARCHITECTS, INC. aka McNULTY BRISKMAN HEATH and DOES 1 through 150, inclusive,<br><br>                          Defendant. | CASE No. CGC07-464235<br><br>**DEFENDANT MBH ARCHITECTS, INC.'S FIRST SET OF SPECIAL INTERROGATORIES**<br><br>Action Filed:          June 12, 2007 |

PROPOUNDING PARTY:    Defendant, MBH Architects, Inc.

RESPONDING PARTY:      Plaintiff, Bovis Lend Lease, Inc.

SET NO.:                      ONE (1)

          Pursuant to California Code of Civil Procedure § 2030.010, Defendant hereby requests that Plaintiff respond to each of the following interrogatories in writing within the time allowed by law.

//

//

//

//

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

DEFENDANT MBH ARCHITECTS. INC.'S FIRST SET OF SPECIAL INTERROGATORIES

1    SPECIAL INTERROGATORY NO. 1:

2               For purposes of diversity jurisdiction under 28 U.S.C. §1332, please identify the

3    state in which Bovis Lend Lease, Inc. had "its principal place of business" at the time the

4    LAWSUIT was filed.  (For purposes of this special interrogatory, the term "LAWSUIT" refers to

5    *Bovis Len Lease, Inc. v. MBH Architects, Inc.* filed in San Francisco County, Case No. CGC07-

6    464235).

7

8

9

10

11    Dated: August ⁷, 2007                LONG & LEVIT LLP

12

13                                    By  *[signature]*

14                                    JENNIFER A. BECKER
                                       JOHN B. SULLIVAN
15                                    Attorneys for Defendant
                                       MBH ARCHITECTS, INC. aka
16                                    McNULTY BRISKMAN HEATH

17    DOCS\S7630-028\537513.V1

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

DEFENDANT MBH ARCHITECTS, INC.'S FIRST SET OF SPECIAL INTERROGATORIES

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, California. I am over the age of 18 years and not a party to the within action. My business address is Long & Levit LLP, 465 California Street, 5th Floor, San Francisco, CA 94104.

On August 9, 2007, I served the documents named below on the following attorney(s) of record and/or interested parties in the case of *Bovis Lend Lease, Inc., etc. v. MBH Architects, Inc., et al.*, Superior Court of California, County of San Francisco, Case No. CGC07 464235.

---
**DEFENDANT MBH ARCHITECTS, INC.'S FIRST SET OF SPECIAL INTERROGATORIES TO PLAINTIFF**
---

SERVED UPON:

| | |
|---|---|
| S. Mitchell Kaplan, Esq.<br>Bryce Carroll, Esq.<br>Molly C. Machold, Esq.<br>GORDON & REES LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111 | *Attorneys for Plaintiffs*<br><br>Tel: 415.986.5900<br>Fax: 415.986.8054 |

☑ (BY MAIL) I am readily familiar with Long & Levit LLP's practice for collection and processing of documents for mailing with the United States Postal Service. I caused such document(s) to be placed in a sealed envelope, addressed to the person(s) on whom it is to be delivered pursuant to the attached service list, with postage thereon fully prepaid, to be deposited with the United States mail at San Francisco, California, that same day in the ordinary course of business.

☐ (BY FACSIMILE) I caused the document(s) described herein to be transmitted from facsimile number (415) 397-6392 to the facsimile number(s) for each party indicated above.

☒ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 9, 2007, at San Francisco, California.

_Letha Payne_

DOCS\S7630-028\537521.V1

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

# EXHIBIT D

1  S. MITCHELL KAPLAN  (SBN 095065)
   BRYCE CARROLL  (SBN 208593)
2  MOLLY C. MACHOLD  (SBN 221005)
   GORDON & REES LLP
3  275 Battery Street, Suite 2000
   San Francisco, CA 94111
4  Telephone: (415) 986-5900
   Facsimile:  (415) 986-8054
5

6  Attorneys for Plaintiff
   BOVIS LEND LEASE, INC. as assignee of
7  LNR-LENNAR BRANNAN STREET, LLC

8

9         SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

10

11 BOVIS LEND LEASE, INC. as assignee of          )  CASE NO.
   LNR-LENNAR BRANNAN STREET, LLC,                )
12                                                )  **BOVIS LEND LEASE'S**
                     Plaintiffs,                  )  **ANSWERS TO MBH**
13                                                )  **ARCHITECT'S FIRST SET OF**
          vs.                                     )  **SPECIAL INTERROGATORIES**
14                                                )
   MBH ARCHITECTS, INC. aka MCNULTY               )
15 BRISKMAN HEATH and DOES 1 through 150,         )
                                                  )
16                   Defendants.                  )
                                                  )
17 _____       )

18

19 PROPOUNDING PARTY:              MBH ARCHITECTS

20 RESPONDING PARTY:               BOVIS LEND LEASE, INC.

21 SET NUMBER:                     ONE

22       Bovis Lend Lease, Inc. ("Responding Party") hereby responds, pursuant to the provisions

23 of California Code of civil Procedure Section 2031(f), to MBH Architects, Inc.'s ("Propounding

24 Party") Interrogatories as follows:

25              **INTRODUCTORY STATEMENT AND GENERAL OBJECTIONS**

26       PLEASE TAKE NOTICE that Responding Party has endeavored in good faith to respond

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1

1   to Propounding Party's Interrogatories, Set One. As a general response to each interrogatory,

2   Responding Party states that its responses are made solely for the purpose of and in relation to

3   this action. Each response is given subject to all appropriate objections (including, but not

4   limited to, those of competence, relevance, materiality, propriety and admissibility) which would

5   require the exclusion of any statement contained herein if the interrogatory were asked of, or any

6   statement contained herein were made by, the witness present and testifying in court. All

7   objections and grounds therefore are reserved for trial. Responding Party has not completed its

8   investigation of the facts relating to this case and has not completed discovery in this action. All

9   responses contained herein are based only upon the information which is presently available and

10  specifically known to Responding Party. Further discovery, investigation, review of records,

11  research and analysis may establish new conclusions and legal contentions and reveal additional

12  and further responses. Therefore, the following responses are given without prejudice to

13  Responding Party's right to produce evidence of subsequently discovered facts.

14          Except for the explicit facts admitted herein. No admissions of any nature whatsoever are

15  to be implied or inferred. The fact that an interrogatory has been responded to herein should not

16  be taken as an admission or an acceptance of the existence of facts set forth or assumed by such

17  interrogatory or that the response constitutes evidence of any facts set forth or assumed. All

18  responses are given and should be construed on the basis of present knowledge. Responding

19  Party objects to all the interrogatories to the extent they seek information protected from

20  disclosure by the attorney-client privilege (Evidence Code §950, *et seq.*) and/or the attorney-

21  work-product doctrine (Code of Civil Procedure §2018) or intended to be used to obtain such

22  protected information.

23          Without waiving any of the foregoing general responses and objections, the responses

24  contained herein are made in good faith to supply as much factual information as is presently

25  known, but should in no way prejudice Responding Party with respect to further discovery,

26  research or analysis.

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

BOVIS LEND LEASE'S ANSWERS TO MBH ARCHITECT'S FIRST SET OF SPECIAL INTERROGATORIES

## RESPONSES TO INTERROGATORY

**Response to Special Interrogatory No. 1:**

Bovis Lend Lease, Inc. is incorporated in Florida and its primary U. S. corporate headquarters are located in New York. Bovis Lend lease, Inc. also has offices in 16 other U. S. cities, including San Francisco. Bovis Lend Lease, Inc. objects to this interrogatory to the extent that identification of its "principal place of business" calls for a legal conclusion.

DATED: September _20_ , 2007          GORDON & REES, LLP

By _____
          Bryce D. Carroll
          Attorneys for Plaintiff
          BOVIS LEND LEASE, INC. as assignee of
          LNR-LENNAR BRANNAN STREET, LLC

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1

2

3

4          **VERIFICATION TO FOLLOW**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**GORDON & REES, LLP**
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111
(415) 986-5900

//62411v.1

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On September 20, 2007, I served the within documents:

**BOVIS LEND LEASE'S ANSWERS TO MBH ARCHITECT'S FIRST SET OF SPECIAL INTERROGATORIES**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

See Attached Service List

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 20, 2007, at San Francisco, California.

Sandra C. Marrujo

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Service List

*Bovis Land Lease, Inc., etc. vs. MBH Architects, Inc., et al.*
*San Francisco Superior Court No. CGC 07 464235*

| Counsel | Party | Counsel | Party |
|---------|-------|---------|-------|
| Jennifer A. Becker, Esq.<br>Long & Levit<br>465 California Street, 5th Floor<br>San Francisco, Ca 94014<br>(415) 397-2222<br>(415) 397-6392 (FAX) | MBH ARCHI-TECTS, INC., aka McNULTY BRISKMAN HEALTH | | |

LNAR/1043708/1381197v.1

# EXHIBIT E

1  S. MITCHELL KAPLAN (SBN 095065)
2  BRYCE CARROLL (SBN 208593)
   MOLLY C. MACHOLD (SBN 221005)
3  GORDON & REES LLP
   275 Battery Street, Suite 2000
4  San Francisco, CA 94111
   Telephone: (415) 986-5900
5  Facsimile: (415) 986-8054

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 1 2 2007

GORDON PARK-LI, Clerk
BY: CAROLYN BALISTRERI
Deputy Clerk

6  Attorneys for Plaintiff
7  BOVIS LEND LEASE, INC. as assignee of
   LNR-LENNAR BRANNAN STREET, LLC

8

9          SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

10

11  BOVIS LEND LEASE, INC. as assignee of      ) CASE NO. CGC-07-46123
    LNR-LENNAR BRANNAN STREET, LLC,            )
                                               ) CERTIFICATE OF MERIT
12                 Plaintiffs,                 )
                                               ) [CCP § 411.35]
13                                             )
          vs.                                  )
14                                             )
    MBH ARCHITECTS, INC. aka MCNULTY           )
15  BRISKMAN HEATH and DOES 1 through 150,     )
                                               )
16                 Defendants.                 )
                                               )
17  _____ )

18

19          I, S. MITCHELL KAPLAN certify as follows:

20          1.    I am the attorney for BOVIS LEND LEASE, INC. as assignee of LNR-LENNAR

21  BRANNAN STREET, LLC, plaintiff in the above-entitled action for property damage against

22  MBH ARCHITECTS, INC. aka MCNULTY BRISKMAN HEATH, a corporation.

23          2.    I have reviewed the facts of this case and have consulted with and received an

24  opinion from at least one architect who is licensed to practice and practices in this state in the

25  same discipline as defendant MBH ARCHITECTS, INC. aka MCNULTY BRISKMAN

26  HEATH.

1

3.      The architect consulted has rendered an opinion that defendant MBH ARCHITECTS, INC. aka MCNULTY BRISKMAN HEATH was negligent in the performance of its services in relation to the subject of this action.

4.      On the basis of my review of the facts of this case and my consultation with the professional engineer referred to above, I have concluded that there is reasonable and meritorious cause for filing this action.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  June ⟨12⟩, 2007                     GORDON & REES, LLP

                                            By  _Sandy M.L._____
                                                S. Mitchell Kaplan
                                                Attorneys for Plaintiff
                                                BOVIS LEND LEASE, INC. as assignee of
                                                LNR-LENNAR BRANNAN STREET, LLC

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

# EXHIBIT F

PLEADING    8/6

S7630.028

1  S. MITCHELL KAPLAN  (SBN 095065)
   BRYCE CARROLL  (SBN 208593)
2  GORDON & REES LLP
   275 Battery Street, Suite 2000
3  San Francisco, CA 94111
   Telephone: (415) 986-5900
4  Facsimile:  (415) 986-8054
5
   Attorneys for Plaintiff
6  BOVIS LEND LEASE, INC. as assignee of
   LNR-LENNAR BRANNAN STREET, LLC
7

8         SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

9

10  BOVIS LEND LEASE, INC. as assignee of          )  CASE NO. CGC 464235
    LNR-LENNAR BRANNAN STREET, LLC,                )
11                                                 )  **NOTICE OF HEARING ON**
                                                   )  **APPLICATION OF STEVEN E.**
                        Plaintiffs,                )  **RAY AND LIZABETH A. MUNIZ**
12                                                 )  **TO APPEAR AS COUNSEL** *PRO*
          vs.                                      )  *HAC VICE*
13                                                 )
    MBH ARCHITECTS, INC. aka MCNULTY               )  <u>**Accompanying Papers:**</u>  Verified
14  BRISKMAN HEATH and DOES 1 through 150,         )  Application of Steven E. Ray, Verified
                                                   )  Application of Lizabeth A. Muniz,
15                      Defendants.                )  [Proposed] Order
                                                   )
16  _____   )
                                                      Date:      September 13, 2007
17                                                    Time:      9:30 a.m.
                                                      Dept.:     301
18

19

20        To the State Bar of California at San Francisco, and to all parties and their attorneys of

21  record:

22        **PLEASE TAKE NOTICE** that on September 13, 2007 at **9:30 a.m.**, or as soon

23  thereafter as the matter may be heard, in **Department 301** of the above-entitled court, located at

24  400 McAllister Street, San Francisco, CA 94102, Steven E. Ray and Lizabeth A. Muniz will

25  apply to appear as counsel *pro hac vice* in this court, pursuant to California Rules of Court, Rule

26  9.40, as counsel on behalf of Plaintiff BOVIS LEND LEASE, INC. as assignee of LNR-

*Left margin vertical text:*
GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1
NOTICE OF HEARING

1  LENNAR BRANNAN STREET, LLC.

2      This request is based upon the verified applications of Steven E. Ray and Lizabeth A.

3  Muniz served herewith, and on such evidence that may be presented at the hearing on the

4  application.

5  DATED: August 3, 2007

6

7

8

9

10

GORDON & REES, LLP

By _____
    Bryce Carroll
    Attorneys for Plaintiff
    BOVIS LEND LEASE, INC. as assignee of
    LNR-LENNAR BRANNAN STREET, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

NOTICE OF HEARING

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On August 6, 2007, I served the within documents:

**NOTICE OF HEARING ON APPLICATION OF STEVEN E. RAY AND LIZABETH A. MUNIZ TO APPEAR AS COUNSEL *PRO HAC VICE***

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

See Attached Service List

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 6, 2007, at San Francisco, California.

Sandra C. Marrujo

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Service List

*Bovis Land Lease, Inc., etc. vs. MBH Architects, Inc., et al.*
*San Francisco Superior Court No. CGC 07 464235*

| Counsel | Party | Counsel | Party |
|---------|-------|---------|-------|
| Jennifer A. Becker, Esq.<br>Long & Levit<br>465 California Street, 5th Floor<br>San Francisco, Ca 94014<br>(415) 397-2222<br>(415) 397-6392 (FAX) | MBH ARCHI-TECTS, INC., aka McNULTY BRISKMAN HEALTH | | State Bar of California<br>180 Howard Street<br>San Francisco, CA 94105<br>(Two $50 filing fees enclosed) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT G



S. MITCHELL KAPLAN (SBN 095065)
BRYCE CARROLL (SBN 208593)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Plaintiff
BOVIS LEND LEASE, INC. as assignee of
LNR-LENNAR BRANNAN STREET, LLC

SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BOVIS LEND LEASE, INC. as assignee of LNR-LENNAR BRANNAN STREET, LLC,<br><br>            Plaintiffs,<br><br>    vs.<br><br>MBH ARCHITECTS, INC. aka MCNULTY BRISKMAN HEATH and DOES 1 through 150,<br><br>            Defendants. | CASE NO. CGC 464235<br><br>**VERIFIED APPLICATION OF STEVEN E. RAY TO APPEAR AS COUNSEL *PRO HAC VICE***<br><br>**Accompanying Papers:** Notice of Hearing, Verified Application of Lizabeth A. Muniz, [Proposed] Order<br><br>Date:        September 13, 2007<br>Time:        9:30 a.m.<br>Dept.:       301 |

I, Stephen E. Ray, declare:

1.      I hereby request leave of this Court to appear in this action as counsel *pro hac vice.*

2.      I have been retained to so appear in association with S. Mitchell Kaplan of Gordon & Rees LLP, Embarcadero Center West, 275 Battery Street, Suite 2000, San Francisco, CA 94111, phone(415) 875-3113, who is counsel of record for Plaintiff Bovis Lend Lease, Inc. as assignee of LNR-LENNAR BRANNAN STREET, LLC and is an active member of the State Bar of California.

3.      My residence address is 270 Charal Lane, Highland Park, IL 60035 and my office

VERIFIED APPLICATION TO APPEAR PRO HAC VICE

GORDON & REES LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1    address is Stein, Ray & Harris LLP, 222 West Adams Street, Suite 1800, Chicago, IL 60606.

2       4.    I have been admitted to practice before the United States District Court for the

3    Northern District of Illinois since March 26, 1982 and the Illinois state court since November 5,

4    1981.

5       5.    I am a member in good standing in the Bars of such courts, and am not currently

6    suspended or disbarred from practice in any court.

7       6.    I have applied, and been admitted as counsel *pro hac vice* on one previous matter.

8    The previous matter was entitled *Webcor Construction, Inc. d/b/a Webcor Builders v. Bovis Lend*

9    *Lease, Inc., et al.*, San Francisco Superior Court case No. 04435422.

10       I declare under penalty of perjury under the laws of the State of California that the

11    foregoing is true and correct.

12       Dated this *31st* day of July, 2007 at Chicago, Illinois.

13

14                                    Stephen E. Ray

15                                    Stephen E. Ray

16

17

18

19

20

21

22

23

24

25

26

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

LNAR/1043708/2483070v.1

2

VERIFIED APPLICATION TO APPEAR PRO HAC VICE

<div style="text-align:center">

## PROOF OF SERVICE

</div>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On August 6, 2007, I served the within documents:

**VERIFIED APPLICATION OF STEVEN E. RAY TO APPEAR AS COUNSEL *PRO HAC VICE***

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

See Attached Service List

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 6, 2007, at San Francisco, California.

_____
Sandra C. Marrujo

<div style="margin-left:2em">

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

</div>

Service List

*Bovis Land Lease, Inc., etc. vs. MBH Architects, Inc., et al.*
*San Francisco Superior Court No. CGC 07 464235*

| Counsel | Party | Counsel | Party |
|---------|-------|---------|-------|
| Jennifer A. Becker, Esq. Long & Levit 465 California Street, 5th Floor San Francisco, Ca 94014 (415) 397-2222 (415) 397-6392 (FAX) | MBH ARCHI-TECTS, INC., aka McNULTY BRISKMAN HEALTH | | State Bar of California 180 Howard Street San Francisco, CA 94105 (Two $50 filing fees enclosed) |

LNAR/1043708/1381197v.1

# EXHIBIT H

1  S. MITCHELL KAPLAN  (SBN 095065)
   BRYCE CARROLL  (SBN 208593)
2  GORDON & REES LLP
   275 Battery Street, Suite 2000
3  San Francisco, CA 94111
   Telephone: (415) 986-5900
4  Facsimile:  (415) 986-8054

5
   Attorneys for Plaintiff
6  BOVIS LEND LEASE, INC. as assignee of
   LNR-LENNAR BRANNAN STREET, LLC
7

8         SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

9

10 BOVIS LEND LEASE, INC. as assignee of          )   CASE NO. CGC 464235
   LNR-LENNAR BRANNAN STREET, LLC,                )
11                                                )   **VERIFIED APPLICATION OF**
                                                  )   **LIZABETH A. MUNIZ TO**
12                 Plaintiffs,                     )   **APPEAR AS COUNSEL** *PRO HAC*
                                                  )   *VICE*
13        vs.                                     )
                                                  )   <u>Accompanying Papers:</u>  Notice of
14 MBH ARCHITECTS, INC. aka MCNULTY              )   Hearing, Verified Application of
   BRISKMAN HEATH and DOES 1 through 150,        )   Steven E. Ray, [Proposed] Order
15                                                )
                  Defendants.                     )
16                                                )   Date:      September 13, 2007
                                                  )   Time:      9:30 a.m.
17 ————————————————————————————                    )   Dept.:     301

18        I, Lizabeth A. Muniz, declare:

19        1.      I hereby request leave of this Court to appear in this action as counsel *pro hac*

20 *vice.*

21        2.      I have been retained to so appear in association with S. Mitchell Kaplan of

22 Gordon & Rees LLP, Embarcadero Center West, 275 Battery Street, Suite 2000, San Francisco,

23 CA 94111, phone(415) 875-3113, who is counsel of record for Plaintiff Bovis Lend Lease, Inc.

24 as assignee of LNR-LENNAR BRANNAN STREET, LLC and is an active member of the State

25 Bar of California.

26        3.      My residence address is 4844 North Kentucky Avenue, Chicago, IL 60630 and

*(margin text, left side)*
GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

1

VERIFIED APPLICATION TO APPEAR PRO HAC VICE

1    my office address is Stein, Ray & Harris LLP, 222 West Adams Street, Suite 1800, Chicago, IL

2    60606.

3       4.    I have been admitted to practice before the United States District Court for the

4    Northern District of Illinois since December 20, 2001, the United States District Court for the

5    Eastern District of Michigan since July, 2003, and the Illinois state court since November 8,

6    2001.

7       5.    I am a member in good standing in the Bars of such courts, and am not currently

8    suspended or disbarred from practice in any court.

9       6.    I have applied, and been admitted as counsel *pro hac vice* on one previous matter.

10   The previous matter was entitled *Webcor Construction, Inc. d/b/a Webcor Builders v. Bovis Lend*

11   *Lease, Inc., et al.*, San Francisco Superior Court case No. 04435422.

12      I declare under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct.

14      Dated this 20 day of July, 2007 at Chicago, Illinois.

15

16   Lizabeth A. Muniz

17

18

19

20

21

22

23

24

25

26

2

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

LNAR/1043708/2483069v.1

PROOF OF SERVICE

2      I am a resident of the State of California, over the age of eighteen years, and not a party
to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite
3   2000, San Francisco, CA 94111. On August 6, 2007, I served the within documents:

4   **VERIFIED APPLICATION OF LIZABETH A. MUNIZ TO APPEAR AS COUNSEL *PRO HAC VICE***

5   ☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set
forth below on this date before 5:00 p.m.

6   ☐   by personally delivering the document(s) listed above to the person(s) at the
7         address(es) set forth below.

8   ☒   by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, in United States mail in the State of California at San Francisco,
9         addressed as set forth below.

10        See Attached Service List

11        I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
12   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
13   meter date is more than one day after the date of deposit for mailing in affidavit.

14        I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.
15

16        Executed on August 6, 2007, at San Francisco, California.

17                                                _Sandra C. Marrujo_
18                                                Sandra C. Marrujo

19

20

21

22

23

24

25

26

27

28

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

1

## Service List

2

### *Bovis Land Lease, Inc., etc. vs. MBH Architects, Inc., et al.*
### *San Francisco Superior Court No. CGC 07 464235*

3

4

| Counsel | Party | Counsel | Party |
|---------|-------|---------|-------|
| Jennifer A. Becker, Esq. Long & Levit 465 California Street, 5th Floor San Francisco, Ca 94014 (415) 397-2222 (415) 397-6392 (FAX) | MBH ARCHI-TECTS, INC., aka McNULTY BRISKMAN HEALTH | | State Bar of California 180 Howard Street San Francisco, CA 94105 (Two $50 filing fees enclosed) |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LNAR/1043708/1381197v.1

# EXHIBIT I

JENNIFER A. BECKER  State Bar # 121319
JOHN B. SULLIVAN  State Bar # 238306
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, CA  94104
TEL: (415) 397-2222  FAX: (415) 397-6392

jabecker@longlevit.com / jsullivan@longlevit.com

Attorneys for Defendant
MBH ARCHITECTS, INC. aka McNULTY
BRISKMAN HEATH

ENDORSED
FILED
San Francisco County Superior Court

AUG - 9 2007

GORDON PARK-LI, Clerk
BY:_____ MARIA SANCHEZ
Deputy Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

BOVIS LEND LEASE, INC. as assignee
of LNR-LENNAR BRANNAN STREET,
LLC,

                         Plaintiff,

        vs.

MBH ARCHITECTS, INC. aka
McNULTY BRISKMAN HEATH and
DOES 1 through 150, inclusive,

                         Defendant.

CASE No. CGC07-464235

**ANSWER**

Action Filed:       June 12, 2007

        COMES NOW defendant MBH ARCHITECTS, INC., by and through its

attorneys, answers the complaint of plaintiff BOVIS LEND LEASE, INC. ("Plaintiff"), as

assignee of LNR-Lennar Brannan Street, LLC ("Assignor") and admits, denies and alleges as

follows:

                    **GENERAL DENIAL**                BY FAX

        Pursuant to Code of Civil Procedure §431.30(d), MBH denies, generally and

specifically, conjunctively and disjunctively, each and every allegation contained in each and

every cause of action alleged against MBH in Plaintiff's complaint and further denies that

Plaintiff has been damaged in the sum or sums alleged, or at all, or that Plaintiff is not entitled to

any relief sought herein or any relief whatsoever.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

ANSWER

1  JENNIFER A. BECKER  State Bar # 121319
   JOHN B. SULLIVAN  State Bar # 238306
2  LONG & LEVIT LLP
   465 California Street, Suite 500
3  San Francisco, CA  94104
   TEL: (415) 397-2222   FAX: (415) 397-6392
4
5  jabecker@longlevit.com / jsullivan@longlevit.com

6  Attorneys for Defendant
   MBH ARCHITECTS, INC. aka McNULTY
   BRISKMAN HEATH
7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

10

11 BOVIS LEND LEASE, INC. as assignee     CASE No. CGC07-464235
   of LNR-LENNAR BRANNAN STREET,
12 LLC,                                   **ANSWER**

13              Plaintiff,                Action Filed:     June 12, 2007

14      vs.

15 MBH ARCHITECTS, INC. aka
   McNULTY BRISKMAN HEATH and
16 DOES 1 through 150, inclusive,

17              Defendant.

18

19        COMES NOW defendant MBH ARCHITECTS, INC., by and through its

20 attorneys, answers the complaint of plaintiff BOVIS LEND LEASE, INC. ("Plaintiff"), as

21 assignee of LNR-Lennar Brannan Street, LLC ("Assignor") and admits, denies and alleges as

22 follows:

23                          **GENERAL DENIAL**

24        Pursuant to Code of Civil Procedure §431.30(d), MBH denies, generally and

25 specifically, conjunctively and disjunctively, each and every allegation contained in each and

26 every cause of action alleged against MBH in Plaintiff's complaint and further denies that

27 Plaintiff has been damaged in the sum or sums alleged, or at all, or that Plaintiff is not entitled to

28 any relief sought herein or any relief whatsoever.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

ANSWER

# AFFIRMATIVE DEFENSES

By alleging the matters set forth below, Defendant does not allege or admit that it has the burden of proof with respect to any of these matters.  As and for separate affirmative defenses Defendant alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

MBH is informed and believes, and on such basis alleges, that Plaintiff and Assignor each had a duty to take reasonable steps to avoid and/or mitigate the alleged damages; that Plaintiff and/or Assignor failed to take such steps, delayed unreasonably in doing so, or took steps which compounded the alleged damages; that had Plaintiff and/or Assignor timely and diligently taken reasonable steps to avoid and/or mitigate the alleged damages, such damages would have been reduced or avoided; and that by failing to mitigate damages, Plaintiff is barred in whole or in part from recovering any damages.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

MBH is informed and believes, and on such basis alleges, that Plaintiff and/or Assignor come to this Court with unclean hands and therefore her complaint is barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

MBH is informed and believes, and on such basis alleges, that Plaintiff and/or Assignor are estopped, by reason of the conduct, acts, and/or omissions of Plaintiff and/or Assignor, to assert any causes of action and/or from recovering any damages against MBH.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

MBH is informed and believes, and on such basis alleges, that Plaintiff and/or Assignor are barred from recovery herein because Plaintiff and/or Assignor each waived their rights to assert or maintain the causes of action alleged in the complaint.

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

2

ANSWER

## FIFTH AFFIRMATIVE DEFENSE

### (Intervening Cause)

MBH is informed and believes, and on such basis alleges, that superseding intervening causes brought about and contributed to any damages suffered by Plaintiff and/or Assignor and any damages should accordingly be abated or reduced as a result of such superseding intervening causes.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to State Cause of Action)

MBH is informed and believes, and on such basis alleges, that the complaint, and each cause of action contained therein, fails to state facts sufficient to constitute any cause of action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Comparative Negligence)

MBH is informed and believes, and such basis alleges, that Plaintiff and/or Assignor did not exercise ordinary care, caution or prudence to avoid the damage complained of and that such damage, if any, was directly and approximately caused by the fault, carelessness, and negligence of Plaintiff and/or Assignor.

## EIGHTH AFFIRMATIVE DEFENSE

### (Fault of Other Third Parties)

MBH is informed and believes, and on such basis alleges, that to the extent Plaintiff and/or Assignor suffered any damage, said damage was directly and approximately caused by the acts or omissions, or both, of the other parties or other persons unknown to MBH.

## NINTH AFFIRMATIVE DEFENSE

### (Civil Code § 1473)

MBH is informed and believes, and on such basis alleges, that prior to the commencement of this action, MBH duly performed, satisfied and discharged all duties and obligations it may have owed to Plaintiff and/or Assignor arising out of any and all agreements,

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1    ~~representations or contracts made by them or on behalf of MBH, and this action is therefore~~

2    ~~barred by Civil Code section 1473.~~

3                        **TENTH AFFIRMATIVE DEFENSE**

4                              (Statute of Limitations)

5        MBH is informed and believes, and on such basis alleges, that the complaint, and

6    all causes of action contained therein, is barred by the applicable statutes of limitations.

7                       **ELEVENTH AFFIRMATIVE DEFENSE**

8                                  (Ratification)

9        Plaintiff and/or Assignor directed, ordered, approved and/or ratified MBH's

10   conduct and is therefore estopped from asserting any claim based thereon.

11                       **TWELFTH AFFIRMATIVE DEFENSE**

12                   (Modification and Misuse of Plans and Designs)

13       Plaintiff and/or Assignor and/or other persons unknown to MBH modified, altered,

14   abused and/or misused the materials, plans, designs, specifications and/or equipment provided by

15   this MBH and such conduct caused and contributed to the damages, if any, which are alleged.

16                      **THIRTEENTH AFFIRMATIVE DEFENSE**

17                               (Indemnification)

18       Should Plaintiff recover anything from MBH, MBH is entitled to indemnification,

19   either in whole or in part, from all persons or entities whose negligence and/or fault proximately

20   contributed to Plaintiff and/or Assignor's damages, if any.

21

22       WHEREFORE, MBH prays:

23       1.    That Plaintiff recover nothing on the complaint for damages and that

24   judgment be entered for MBH;

25       2.    That MBH be awarded its reasonable attorney's fees incurred herein;

26       3.    That MBH be awarded its costs of suit incurred in defending this action

27   according to proof at trial;

28       4.    That the degree of responsibility for Plaintiff's damages, if any there be, be

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

4

ANSWER

1 | ~~determined in apportioned according to the comparative negligence of the parties liable therefore:~~

2 | ~~and~~

3 |         5.      That the Court grant such other and further relief as is just and proper.

Dated: August 1, 2007              LONG & LEVIT LLP

By                     

JENNIFER A. BECKER
JOHN B. SULLIVAN
Attorneys for Defendant
MBH ARCHITECTS, INC. aka
McNULTY BRISKMAN HEATH

DOCS\S7630-028\537229.V1

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

5

ANSWER

1

## PROOF OF SERVICE

2
3
4

I am employed in the City and County of San Francisco, California. I am over the age of 18 years and not a party to the within action. My business address is Long & Levit LLP, 465 California Street, 5th Floor, San Francisco, CA 94104.

5
6

On August 9, 2007, I served the documents named below on the following attorney(s) of record and/or interested parties in the case of *Bovis Lend Lease, Inc., etc. v. MBH Architects, Inc., et al.,* Superior Court of California, County of San Francisco, Case No. CGC07 464235.

7

| **ANSWER** |
| --- |

8

SERVED UPON:

9
10
11
12

| S. Mitchell Kaplan, Esq. <br> Bryce Carroll, Esq. <br> Molly C. Machold, Esq. <br> GORDON & REES LLP <br> 275 Battery Street, Suite 2000 <br> San Francisco, CA 94111 | *Attorneys for Plaintiffs* <br><br> Tel: 415.986.5900 <br> Fax: 415.986.8054 |
| --- | --- |

13
14
15
16
17

☒  (BY MAIL) I am readily familiar with Long & Levit LLP's practice for collection and processing of documents for mailing with the United States Postal Service. I caused such document(s) to be placed in a sealed envelope, addressed to the person(s) on whom it is to be delivered pursuant to the attached service list, with postage thereon fully prepaid, to be deposited with the United States mail at San Francisco, California, that same day in the ordinary course of business.

18
19

☐  (BY FACSIMILE) I caused the document(s) described herein to be transmitted from facsimile number (415) 397-6392 to the facsimile number(s) for each party indicated above.

20
21

☒  (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22
23
24

Executed on August 9, 2007, at San Francisco, California.

Letha Payne

25

DOCS\S7630-028\537107.V1

26
27
28

Print | Close Window

# One Legal Order Receipt

## Order Number: 5355060

(Note - If you submitted multiple orders, please refer to your specific order number shown below in the "Orders" section)

Thank you for choosing One Legal, Inc. If you have any questions about this order, please contact our San Francisco Branch.

Phone: 415-437-1377
Fax: 415-437-9684

## DO *NOT* FAX THIS ORDER RECEIPT WITH YOUR DOCUMENTS
## THIS IS FOR YOUR RECORDS ONLY

**Order Detail**

Order Type: File Only
Date Time Submitted: 08/09/2007 02:18 PM
Client File #: S7630.028
Contact Name: Letha A Payne
Attorney Name: JOHN B. SULLIVAN
Email Notification: Contact

**Case Information**

Court Branch: Superior Court of San Francisco County
Court Name: San Francisco (SAN FRANCISCO)
Court City/Zip: San Francisco 94102
Plaintiff: BOVIS LEND LEASE, INC.
Defendant: MBH ARCHITECTS, INC.
Representing: Defendant
Case No: CGC07-464235
Hearing Date:
Hearing Time:
Hearing Dept/Rm:

**Documents**

| Document Type | Document Name | Pages Uploaded | Pages to Fax | Total Pages |
| --- | --- | --- | --- | --- |
| Answer | Answer | 6 | 0 | 6 |

**Special Instructions:**
PLEASE ADVANCE FIRST APPEARANCE FEE

**Orders:**
Filing Order No. 5355060
On Demand: No

# ONE LEGAL, INC.

## CONFIRMATION For Court Filing & Research



| ONE LEGAL, INC. CONFIRMATION FOR ORDER NO: 5355060 | Date: 8/9/2007 |
|---|---|

| | |
|---|---|
| Customer LONG & LEVIT | Attorney JOHN B. SULLIVAN |
| Customer No. 0000479 | Attorney e-mail jsullivan@longlevit.com |
| Address 465 California Street | Contact Letha A Payne |
| Ste. 500 | Contact e-mail lpayne@longlevit.com |
| San Francisco, CA  94104 | Contact Phone 415-397-2222 |
| | Contact Fax 415-397-6392 |
| | Law Firm File Number S7630.028 |

**Case Information:**

Case Number CGC07-464235
County SAN FRANCISCO
Court San Francisco
Case Short Title BOVIS LEND LEASE, INC. vs. MBH ARCHITECTS, INC.

| Documents Received: | No. Docs: 1 | No. Pgs: 6 |
|---|---|---|
| Answer | | |

### This is a Confirmation Only. Not an Invoice!

| Notes: | Services: | Summary of Charges: |
|---|---|---|
| File Status: Assignment Completed | Service fee | 29.50 |
| Emailed back: 8/9/2007 | Court Filing Fee | 335.00 |
| | Clerk of Court Ck:3108762 | |
| | Funds advance fee | 23.45 |
| | **Total:** | **387.95** |

Thank you for choosing One Legal.  If you have any questions
about this assignment, please contact,
San Francisco Branch
Ph: 415-437-1377
Fx: 415-437-9684

Superior Court of California,
County of San Francisco
Civil/Small Claims

Aug-09-2007    W2007809F011        MSANCHEZ
14:54:47

CASE NUMBER: CGC-07-464235

BOVIS LEND LEASE INC AS ASSIGNEE OF LNR-
LENNAR VS. MBH ARCHITECTS INC AKA MCNULT
Y BRISKMAN HEATH et al

CIVIL FIRST PAPER ANSWER/RESPONSE/PLEADI
NG

FILED BY MBH ARCHITECTS, INC.

FEE:        $335.00 PAID BY CHECK

            THANK YOU

# EXHIBIT J

S. MITCHELL KAPLAN (SBN 095065)
~~BRYCE CARROLL (SBN 208593)~~
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

S 7630. 028

PLEADING

Attorneys for Plaintiff
BOVIS LEND LEASE, INC. as assignee of
LNR-LENNAR BRANNAN STREET, LLC

SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO

BOVIS LEND LEASE, INC. as assignee of
LNR-LENNAR BRANNAN STREET, LLC,

              Plaintiffs,

vs.

MBH ARCHITECTS, INC. aka MCNULTY
BRISKMAN HEATH and DOES 1 through 150,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CGC 464235

**SUPPLEMENTAL DECLARATION OF BRYCE CARROLL IN SUPPORT OF APPLICATION OF STEVEN E. RAY AND LIZABETH MUNIZ TO APPEAR AS COUNSEL *PRO HAC VICE***

Date:     September 13, 2007
Time:    9:30 a.m.
Dept.:    301

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

I, Bryce Carroll, declare:

    1.    I am an attorney at law licensed to practice before this court and I am an Associate with the firm of Gordon & Rees LLP, Embarcadero Center West, 275 Battery Street, Suite 2000, San Francisco, CA 94111, phone(415) 986-5900 counsel of record for Plaintiff BOVIS LEND LEASE, INC. as assignee of LNR-LENNAR BRANNAN STREET, LLC and am an active member of the State Bar of California.

    2.    Attached as exhibit A is a true and correct copy of The State Bar of California Office of Special Admissions and Specialization's Confirmation Receipt evidencing proof of payment on behalf of Stephen Ray and Lizabeth Muniz to the State Bar pursuant to C.R.C.

1

SUPPLEMENTAL DECLARATION IN SUPPORT OF APPLICATION TO APPEAR PRO HAC VICE

1    9.40(e).

2        I declare under penalty of perjury under the laws of the State of California that the

3    foregoing is true and correct.

4        Dated this 10th day of August, 2007 at San Francisco, California.

5

6    _____

7    Bryce Carroll

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GORDON & REES, LLP
ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, TWENTIETH FLOOR
SAN FRANCISCO, CA 94111

LNAR/1043708/4093680v.1

SUPPLEMENTAL DECLARATION IN SUPPORT OF APPLICATION TO APPEAR PRO HAC VICE

//2392697v.1

# EXHIBIT A

1  S. MITCHELL KAPLAN (SBN 095065)
2  BRYCE CARROLL (SBN 208593)
   GORDON & REES LLP
3  275 Battery Street, Suite 2000
   San Francisco, CA 94111
4  Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
5
   Attorneys for Plaintiff
6  BOVIS LEND LEASE, INC. as assignee of
   LNR-LENNAR BRANNAN STREET, LLC
7

THE STATE BAR OF CALIFORNIA
OFFICE OF SPECIAL ADMISSIONS
AND SPECIALIZATION

AUG - 7 2007

CONFIRMATION RECEIPT
$: 100      INTL: _____
P: 4       SB FILE #: 46939
                        46940

8          SUPERIOR COURT OF CALIFORNIA - COUNTY OF SAN FRANCISCO
9

10  BOVIS LEND LEASE, INC. as assignee of        )  CASE NO. CGC 464235
    LNR-LENNAR BRANNAN STREET, LLC,              )
11                                               )  **NOTICE OF HEARING ON**
                                                 )  **APPLICATION OF STEVEN E.**
12                        Plaintiffs,            )  **RAY AND LIZABETH A. MUNIZ**
                                                 )  **TO APPEAR AS COUNSEL** *PRO*
13            vs.                                )  *HAC VICE*
                                                 )
14  MBH ARCHITECTS, INC. aka MCNULTY            )  __Accompanying Papers:__ Verified
    BRISKMAN HEATH and DOES 1 through 150,       )  Application of Steven E. Ray, Verified
15                                               )  Application of Lizabeth A. Muniz,
                          Defendants.            )  [Proposed] Order
16                                               )
17  _____ )
                                                    Date:      September 13, 2007
18                                                  Time:      9:30 a.m.
                                                    Dept.:     301
19

20        To the State Bar of California at San Francisco, and to all parties and their attorneys of

21  record:

22        **PLEASE TAKE NOTICE** that on September 13, 2007 at **9:30 a.m.,** or as soon

23  thereafter as the matter may be heard, in **Department 301** of the above-entitled court, located at

24  400 McAllister Street, San Francisco, CA 94102, Steven E. Ray and Lizabeth A. Muniz will

25  apply to appear as counsel *pro hac vice* in this court, pursuant to California Rules of Court, Rule

26  9.40, as counsel on behalf of Plaintiff BOVIS LEND LEASE, INC. as assignee of LNR-

1

1

## PROOF OF SERVICE

2

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On August 13, 2007, I served the within documents:

3

4

**SUPPLEMENTAL DECLARTION OF BRYCE CARROLL IN SUPPORT OF APPLICATION OF STEVEN E. RAY AND LIZABETH MUNIZ TO APPEAR AS COUNSEL *PRO HAC VICE***

5

6   ☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

7   ☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

8
9   ☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

10

11          See Attached Service List

12   I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

13

14

15   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

16   Executed on August 13, 2007, at San Francisco, California.

17

18                                          Sandra C. Marrujo

19

20

21

22

23

24

25

26

27

28

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

| | |
|---|---|
| 1 | Service List |
| 2 | |

*Bovis Land Lease, Inc., etc. vs. MBH Architects, Inc., et al.*
*San Francisco Superior Court No. CGC 07 464235*

| Counsel | Party | Counsel | Party |
|---|---|---|---|
| Jennifer A. Becker, Esq.<br>Long & Levit<br>465 California Street, 5th Floor<br>San Francisco, Ca 94014<br>(415) 397-2222<br>(415) 397-6392 (FAX) | MBH ARCHI-TECTS, INC., aka McNULTY BRISKMAN HEALTH | | |